[No. S035748. Dec. 15, 1994.]

FORD & VLAHOS, Plaintiff, Cross-defendant and Appellant, v.
ITT COMMERCIAL FINANCE CORP., Defendant, Cross-complainant
and Appellant.

1222

## COUNSEL

Kline & Joseph, Stephen L. Joseph, Richard Collier Sears, Nossaman, Guthner, Knox & Elliott, William T. Bagley and Douglas J. Maloney for Plaintiff, Cross-defendant and Appellant.

Christopher M. Micheli and Nancy M. McDonough as Amici Curiae on behalf of Plaintiff, Cross-defendant and Appellant.

Howard, Rice, Nemerovski, Canady, Robertson & Falk, Howard, Rice, Nemerovski, Canady, Robertson, Falk & Rabkin, Jerome B. Falk, Jr., Bernard A. Burk and Matthew F. Weil for Defendant, Cross-complainant and Appellant.

Christopher E. Chenoweth as Amicus Curiae on behalf of Defendant, Cross-complainant and Appellant.

## OPINION

**MOSK, J.**—This case presents a narrow question of law: whether the California version of Uniform Commercial Code section 9-504, subdivision (3), definitively limits a secured party's duty to advertise the sale of collateral merely to placing a legal notice in a newspaper. We conclude it does not, and therefore reverse the Court of Appeal's judgment and remand the case for consideration of the secured party's other claims of error.

Defendant secured party lent plaintiff debtor money to buy a Lockheed Hercules C-130A aircraft and acquired a purchase-money security interest in it. The parties agreed that California law would govern the security agreement.

Plaintiff defaulted on the loan and was notified by defendant that it would repossess the aircraft. On August 26, 1987, defendant informed plaintiff it would hold a public sale of the C-130A on September 3 at Chandler, Arizona.

On August 28, 1987, defendant advertised the sale's time and place in the Arizona Republic, a newspaper of general circulation in Maricopa County, Arizona, where Chandler is located. The advertisement stated that the United States Department of State would have to approve "the purchaser and the secured party's right to bid [on] and purchase" the aircraft. But the advertisement apparently inadvertently omitted the information about whom to contact to qualify as a bidder. That error caused defendant to place a corrected advertisement in the Phoenix (Arizona) Gazette on September 2.

Defendant, the sole bidder at the auction, bought the C-130A the next day for $1 million. After the sale defendant's agent advertised the aircraft in Trade-A-Plane. The agent testified that Trade-A-Plane is "the Bible of aircraft sales in this country." In March 1988 defendant agreed to sell the C-130A to African Air Trans, Inc., for $1,525,000, eventually, according to defendant, receiving $1,487,000 from that company.

Plaintiff sued for improper disposition of the collateral and defendant cross-complained for a deficiency plaintiff allegedly owed after credit for the $1 million foreclosure-sale bid.

The trial court found the aircraft's sale commercially unreasonable because accompanied by insufficient publicity and hence the subject of too few bids. The court also found the notices of sale "legally insufficient" for various reasons. The court's statement of decision recited:

"The only notice of the auction was the *Arizona Republic* newspaper ad placed in the auction section of the newspaper. The ad contained an incomplete sentence regarding qualifications to purchase.

"The Court finds that a correction appeared in the *Phoenix Gazette* on September 2, 1987, one day prior to the auction.

"The Court finds that there was no evidence that the *Arizona Republic* or *Phoenix Gazette* were publications circulated among or read by potential purchasers of this Aircraft.

"The Court finds that no publicity for the September auction sale was given in aviation trade journals, such as *Trade-A-Plane*. . . .

"The Court concludes that publication of a notice for the September 3 auction of this Aircraft in the *Phoenix Gazette* was legally insufficient to satisfy [California Uniform Commercial Code section] 9504 in that it did not conform to the five-day time requirement of the statute.

"The Court finds that the *Arizona Republic* notice affirmatively stated that prequalification as a bidder was necessary.

"The Court concludes that the omission of any contact name or telephone number to obtain prequalification information rendered the *wording* contained in the *Arizona Republic* notice legally insufficient under [California Uniform Commercial Code section] 9504. . . .

"The Court finds that, other than the newspaper notices, Defendant ITT made no efforts to contact potential purchasers regarding the September 3 auction.

"The Court finds that Defendant ITT had available to it the resources of an aircraft broker . . . who knew potential aircraft buyers and the means of publicity to announce aircraft auctions. . . .

"The Court concludes that Defendant ITT did not conduct the auction sale on September 3, 1987 in good faith and in a commercially reasonable manner as required by [California Uniform Commercial Code section] 9504. . . ."

With regard to the collateral's value, the court ruled, "based on . . . expert opinion testimony . . . , that the fair market value of the Aircraft on the date of sale, September 3, 1987, was $3.8 million."

On the basis of that valuation, the court set plaintiff's damages at $3.8 million, but granted defendant an offset of $996,050, a figure representing the sum of plaintiff's debt to defendant and defendant's expenses in repossessing, refurbishing and selling the aircraft. The ensuing judgment netted plaintiff $2,803,950.

The Court of Appeal reversed the judgment in part. As relevant here, the majority decided the Legislature had created a "safe harbor" in California Uniform Commercial Code section 9504, subdivision (3)—unlabeled statutory references are to this code—whereby satisfying the statute's notice requirement precluded any challenge to the sale's commercial reasonableness on the basis of inadequate publicity. The majority wrote, "ITT [defendant] contends that by specifying the time and manner for notice of a public sale, our Legislature intended to establish a bright-line rule to prevent disputes over the 'reasonableness' of presale publicity. This contention is supported by the legislative history of section 9504(3)." Thus, the majority

reasoned, "Compliance with the letter of section 9504(3) creates a safe harbor against claims that the publicity for a public sale was inadequate." Acknowledging that "there may be situations . . . where such a limited notice would seem less than fair," the majority stated in essence that any complaints should be addressed to the Legislature. The majority thus rejected the reasoning of *American Business Credit Corp.* v. *Kirby* (1981) 122 Cal.App.3d 217, 221 [175 Cal.Rptr. 720], and *Clark Equipment Co.* v. *Mastelotto, Inc.* (1978) 87 Cal.App.3d 88, 96-97 [150 Cal.Rptr. 797], "cases that have suggested, contrary to our conclusion, that a single, timely newspaper notice might not be sufficient," because those cases "did not consider section 9504(3)'s legislative history, or address whether the statute's notice provisions were meant to conclusively establish what is required to publicize an auction of collateral."

The dissent declared that the majority's bright-line rule was unfounded. Citing the cases mentioned above, the dissent observed that, "In each of these cases the court treated adequate notice and publicity adequate to be commercially reasonable as two distinct inquiries. Adequate notice, that is notice which met the minimum requirements of the subdivision, did not define the scope of commercially reasonable publicity or advertising." The dissent continued, "In my view the specific notice requirements imposed by the section define the minimum notice which must be given. I do not, unlike the majority, construe *notice* to be coextensive with *publicity*. The duty to publicize a sale adequately arises from the general duty of the creditor to act 'in a commercially reasonable manner.' What is commercially reasonable publicity must turn on the specific circumstances of what the collateral is and how it is to be sold. [¶] . . . The published notice given here was not, standing alone, commercially reasonable publicity for the sale of a multimillion dollar aircraft."

Because the Court of Appeal majority concluded that the Legislature had conclusively defined the publicity required for a sale of foreclosed collateral, it did not address defendant's other claims of error, including contentions regarding the court's calculation of the aircraft's value, its valuation of defendant's expenses attendant to repossessing and selling the aircraft, and its asserted refusal to find that plaintiff was not the real party in interest.

We granted plaintiff debtor's petition for review. For its part, defendant secured party requests that we take judicial notice of certain materials bearing on legislative intent. That request, which is unopposed, is also granted. (Evid. Code, §§ 452, subds. (c), (h), 459, subd. (a).)

■ Defendant contends that the references to notice in subdivision (3) of section 9504 conclusively define the publicity required for a public sale of foreclosed collateral. Defendant reasons that because it met the statute's notice requirements, the court could not properly find the sale commercially unreasonable for want of sufficient publicity. In sum, it contends the Court of Appeal majority correctly understood the meaning of section 9504, subdivision (3).

We interpret the California Uniform Commercial Code otherwise. As we will describe, notice on the one hand, and publicity or advertising on the other, are separate but related concepts under the California Uniform Commercial Code. (We define advertising broadly as all efforts to alert possible buyers to an impending sale, including professionally designed displays in public media and flyers or brochures circulated to a narrower audience.)

The Legislature enacted a modified form of Uniform Commercial Code section 9-504, subdivision (3). (Compare Stats. 1963, ch. 819, § 1, pp. 1993-1994, with 3B West's U. Laws Ann. (1992) U. Com. Code, pp. 127-129.) Having been amended in certain minor respects irrelevant to our inquiry, section 9504, subdivision (3), now provides in relevant part: "A sale or lease of collateral may be as a unit or in parcels, at wholesale or retail and at any time and place and on any terms, provided the secured party acts in good faith and in a commercially reasonable manner. [Ordinarily] the secured party must give to the debtor . . . and to any other person who has a security interest in the collateral and who has filed with the secured party a written request for notice . . . , a notice in writing of the time and place of any public sale or of the time on or after which any private sale or other intended disposition is to be made. Such notice must be delivered personally or be deposited in the United States mail postage prepaid addressed to the debtor . . . and to any other secured party . . . at least five days before the date fixed for any public sale or before the day on or after which any private sale or other disposition is to be made. Notice of the time and place of a public sale shall also [ordinarily] be given at least five days before the date of sale by publication once in a newspaper of general circulation published in the county in which the sale is to be held . . . . The secured party may buy at any public sale and if the collateral is customarily sold in a recognized market or is the subject of widely or regularly distributed standard price quotations he or she may buy at private sale. Any sale of which notice is

delivered or mailed and published as herein provided and which is held as herein provided is a public sale."[1]

By its plain terms, section 9504, subdivision (3), provides that the secured party is to "act[ ] in good faith and in a commercially reasonable manner" when auctioning foreclosed personalty. (See also § 1203.) The term "commercially reasonable" is again articulated, and is partially defined, in section 9507, subdivision (2), which provides in relevant part, "The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If

---

[1]In its entirety, section 9504, subdivision (3), currently provides:

"A sale or lease of collateral may be as a unit or in parcels, at wholesale or retail and at any time and place and on any terms, *provided the secured party acts in good faith and in a commercially reasonable manner.* Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, the secured party must give to the debtor, if he or she has not signed after default a statement renouncing or modifying his or her right to notification of sale, and to any other person who has a security interest in the collateral and who has filed with the secured party a written request for notice giving his or her address (before that secured party sends his or her notification to the debtor or before debtor's renunciation of his or her rights), a notice in writing of the time and place of any public sale or of the time on or after which any private sale or other intended disposition is to be made. Such notice must be delivered personally or be deposited in the United States mail postage prepaid addressed to the debtor at his or her address as set forth in the financing statement or as set forth in the security agreement or at such other address as may have been furnished to the secured party in writing for this purpose, or, if no address has been so set forth or furnished, at his or her last known address, and to any other secured party at the address set forth in his or her request for notice, at least five days before the date fixed for any public sale or before the day on or after which any private sale or other disposition is to be made. Notice of the time and place of a public sale shall also be given at least five days before the date of sale by publication once in a newspaper of general circulation published in the county in which the sale is to be held or in case no newspaper of general circulation is published in the county in which the sale is to be held, in a newspaper of general circulation published in the county in this state that (1) is contiguous to the county in which the sale is to be held and (2) has, by comparison with all similarly contiguous counties, the highest population based upon total county population as determined by the most recent federal decennial census published by the Bureau of the Census. Any public sale shall be held in the county or place specified in the security agreement, or if no county or place is specified in the security agreement, in the county in which the collateral or any part thereof is located or in the county in which the debtor has his or her residence or chief place of business, or in the county in which the secured party has his or her residence or a place of business if the debtor does not have a residence or chief place of business within this state. If the collateral is located outside of this state or has been removed from this state, a public sale may be held in the locality in which the collateral is located. Any public sale may be postponed from time to time by public announcement at the time and place last scheduled for the sale. The secured party may buy at any public sale and if the collateral is customarily sold in a recognized market or is the subject of widely or regularly distributed standard price quotations he or she may buy at private sale. Any sale of which notice is delivered or mailed and published as herein provided and which is held as herein provided is a public sale." (Italics added.)

the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner."[2]

Read together, sections 9504, subdivision (3), and 9507, subdivision (2), cast considerable doubt on the Court of Appeal majority's view that as long as the statutory notice requirements are met, the publicity attending a sale of foreclosed collateral is deemed to be commercially reasonable. Section 9507 provides that property sold by methods a responsible dealer would utilize is sold in a commercially reasonable manner. A dealer in the type of property repossessed here—a valuable airplane—surely would advertise its auction in the relevant market by, for example, informing brokers, placing reasonably prominent announcements in recognized trade journals, or contacting individuals or entities known to be seeking an airplane of the type for sale. (See *Grumman Credit* v. *Rivair Flying Service* (Okla. 1992) 845 P.2d 182, 186 [845 P.2d 182]; *Contrail Leasing Partners* v. *Consolidated Airways* (7th Cir. 1984) 742 F.2d 1095, 1099; *C.I.T. Corporation* v. *Lee Pontiac, Inc.* (9th Cir. 1975) 513 F.2d 207, 210.) To be sure, nowhere does subdivision (2) of section 9507 explicitly state that failing to sell collateral of this type as would a responsible dealer makes the sale commercially unreasonable. But it is difficult to read the law any other way with regard to the valuable type of collateral at issue here. (See *Canadian Commercial Bank* v. *Ascher Findley Co.* (1991) 229 Cal.App.3d 1139, 1149 [280 Cal.Rptr. 521] ["A commercially reasonable disposition is presumed to be in good faith and at the greatest possible market rate."].)

And yet defendant's interpretation of section 9504, subdivision (3), would simply nullify section 9507, subdivision (2), whenever complying with the former statute's formal notice requirements would not yield the kind of

---

[2]In its entirety, section 9507, subdivision (2), currently provides: "The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or *if he has otherwise sold in conformity with reasonable commercial practices* among dealers in the type of property sold he has sold in a commercially reasonable manner. The principles stated in the two preceding sentences with respect to sales also apply as may be appropriate to other types of disposition. A disposition which has been approved in any judicial proceeding or by any bona fide creditors' committee or representative of creditors shall conclusively be deemed to be commercially reasonable, but this sentence does not indicate that any such approval must be obtained in any case nor does it indicate that any disposition not so approved is not commercially reasonable." (Italics added.)

publicity a responsible dealer would generate to sell a chattel of the type foreclosed. We cannot conclude that the Legislature meant to provide that a sale's advertising is commercially reasonable as long as the bare requirements of formal notice are met, even if, to sell the type of collateral involved, a responsible dealer would employ more extensive advertising than placing a legal notice in agate type in an obscure newspaper. Publicity is much too important to ‚a proper sale of foreclosed collateral for such a hypothesis to be commercially viable. ■ For advertising is sine qua non to attendance at an auction, and as then-Presiding Justice Panelli explained in *Ford Motor Credit Co.* v. *Price* (1985) 163 Cal.App.3d 745, 751 [210 Cal.Rptr. 17], "Common sense tells us that the larger the attendance at a public sale of collateral, the more likely it is that there will be competitive bidding. Competitive bidding helps to assure that the purchase price approximates the fair market value of the property and also prevents a [secured party] from exaggerating his deficiency by underbidding." Hence, "[o]ne of the most important elements of commercial reasonableness is the duty to surround the sale with publicity sufficient to attract a 'lively concourse of bidders.' " (*Westgate State Bank* v. *Clark* (1982) 231 Kan. 81 [642 P.2d 961, 970].)

■ The importance of advertising as an element of commercial reasonableness was emphasized in *Villella Enterprises, Inc.* v. *Young* (1988) 108 N.M. 33 [766 P.2d 293], the facts of which are similar to those the trial court found here. "We are particularly concerned with the minimal effort exerted by Villella to notify the public of the sale. Notice of sale should be given to a 'public' reasonably expected to have an interest in the collateral and should be 'published in a manner reasonably calculated to assure such publicity that the collateral will bring the best possible price from competitive bidding of a strived-for lively concourse of bidders.' [Citations.] Villella placed an ad only in the *Health City Sun*, a weekly legal periodical, two weeks prior to the sale. No evidence was produced that the *Health City Sun* is the type of publication that would reach prospective bidders for the assets of a bar business. [Citations.] Neither is there any indication that Villella contacted the individuals who had offered . . . to purchase [the business] . . . even though he was aware of their identities." (766 P.2d at p. 297; see also *Commercial Credit Equipment* v. *Parsons* (Mo.Ct.App. 1991) 820 S.W.2d 315, 323; *Farmers Equipment Company* v. *Miller* (1972) 252 Ark. 1092 [482 S.W.2d 805, 809-810]; *Levers* v. *Rio King Land & Inv. Co.* (1977) 93 Nev. 95 [560 P.2d 917, 920].)

The foregoing reasoning clearly applies to the sale of an airplane. (*Dynalectron Corporation* v. *Jack Richards Aircraft Co.* (W.D.Okla. 1972) 337

F.Supp. 659, 662-663.) "Although [secured party] offered testimony that it gave notice of the sale orally to all major airplane brokers in the United States, the judge disbelieved this testimony, and we cannot say he was clearly wrong to do so. So far as appears, all [secured party] did in the way of notice was to place an inconspicuous ad in one publication of the used-aircraft trade . . . . There was testimony that a serious effort to interest potential buyers would have required a more conspicuous ad plus advertising in other trade publications as well. The fact that no one showed up for the sale except [secured party] is consistent with the fact that [it] made little effort, on this occasion anyway, to sell the plane." (*Contrail Leasing Partners* v. *Consolidated Airways, supra,* 742 F.2d at p. 1099.)

Our analysis cannot end at this point, however. Defendant has consistently maintained that although a public sale's "time," "place," and "terms" must be "commercially reasonable" (§ 9504, subd. (3)), notice need not meet that standard, because the Legislature specified the notice required, commercially reasonable or not, to the exclusion of any other rule, and we are not free to simply cast aside that language, regardless of the logic of our reasoning. In sum, defendant might assert that just as we conclude defendant's view of notice and advertising would, if adopted, nullify section 9507, subdivision (2) (*ante,* pp. 1229-1230), our discussion in turn renders the notice language of section 9504, subdivision (3), ineffectual, and that " '[a] construction which makes sense of an apparent inconsistency is to be preferred to one which renders statutory language useless or meaningless.' " (*Hartford Fire Ins. Co.* v. *Macri* (1992) 4 Cal.4th 318, 326 [14 Cal.Rptr.2d 813, 842 P.2d 112].)

Such an equivalence would be false, however. It could only arise under a mistaken view that the Legislature merged adequate advertising and formal notice into a single requirement for a valid foreclosure sale. In fact the requirements of proper notice and of commercial reasonableness, including reasonable advertising, are distinct, although, as we explain *post,* page 1233, notice by publication is a form of advertising and therefore fulfilling the notice-by-publication requirement will in some circumstances satisfy the requirement of adequate promotion of a sale. (*Am. State Bank of Killdeer* v. *Hewson* (N.D. 1987) 411 N.W.2d 57, 60] [discussing the "twofold obligation . . . to conduct the sale of the collateral in a commercially reasonable manner and to provide 'reasonable notification of the time and place of any public sale' "]; *Levers* v. *Rio King Land & Inv. Co., supra,* 560 P.2d 917, 919-920 ["In addition to giving reasonable notice, a secured party must, after default, proceed in a commercially reasonable manner to dispose of collateral."]; *Clark Equipment Co.* v. *Mastelotto, Inc., supra,* 87 Cal.App.3d 88, 96.)

■ The purpose of notice to the debtor and to other secured creditors under the California Uniform Commercial Code is to alert them that their interests may be extinguished very soon. This concept derives from the venerable American legal rule that a private creditor must give formal legal notice before selling a debtor's property at public auction. (*Newman* v. *Jackson* (1827) 25 U.S. [12 Wheat.] 570, 572-574 [6 L.Ed. 732, 732-733]; see 1 Glenn on Mortgages (1943) § 107, p. 644.) Because a nonjudicial foreclosure sale is a "summary sale" (*Podrat* v. *Oberndorff* (1929) 207 Cal. 457, 459 [278 P. 1035, 63 A.L.R. 1308] [discussing pledges and chattel mortgages]) that the secured party is entitled to conduct relatively quickly (see 2 White & Summers, Uniform Commercial Code (3d ed. 1988) § 27-12, p. 605), elementary fairness to the debtor requires that it, other interested parties, and the public receive formal notice so as to protect the debtor from another's self-dealing or an unfairly low auction price (4 Casner, American Law of Property (1952) Mortgages, § 16.207, pp. 505-509).

Such notice requirements have existed in California for many decades. (Civ. Code, §§ 2924f, subd. (b)(1), 2924g, subd. (a) [public auction of real property foreclosed under power of sale]; *Sargent* v. *Shumaker* (1924) 193 Cal. 122, 125 [223 P. 464].) Hence it is wholly unremarkable that a notice requirement found its way into California's version of subdivision (3)(b) of section 6 of the Uniform Trust Receipts Act (1933) (quoted in 9C Thompson's U. Laws Ann. (1957) at p. 247), an immediate predecessor to section 9504 (see 3B West's U. Laws Ann., *supra*, U. Com. Code, com. to § 9-504, p. 129). The California trust receipts law provided that if a trustee defaulted, an entruster in possession of the goods might "on or after default, give notice to the trustee of intention to sell, and may, not less than five days after the serving or sending of such notice, sell the goods . . . at public or private sale, and may at a public sale himself become a purchaser. . . . Notice of sale shall be deemed sufficiently given if in writing, and either (i) personally served on the trustee, or (ii) sent by postpaid ordinary mail to the trustee's last known business address." (Former Civ. Code, § 3016.2, subd. (3)(b), added by Stats. 1935, ch. 716, § 1, pp. 1930, 1934-1935, and repealed by Stats. 1963, ch. 819, § 2, p. 1997.) When section 9504, subdivision (3), supplanted the quoted trust receipts statute, we believe the California drafters decided to retain the notice requirement and to add a notice-by-publication rule akin to that present for public sales of foreclosed real property (former Civ. Code, § 2924; former Code Civ. Proc., § 692, subd. 3, enacted in 1872 and repealed by Stats. 1982, ch. 1364, § 1, p. 5070).

In contrast to notice, one purpose of which is to alert the debtor and other secured creditors to take steps to protect their interests, possibly including

locating bidders for their collateral, the purpose of requiring adequate advertising of a foreclosure sale is to force the secured party to ensure the auction is well attended by legitimate bidders, so that the highest commercially reasonable price for the collateral will be obtained.

But a prime purpose of notice by publication is to provide notice of the auction to the public—i.e., to advertise, in the broad sense of that term, the sale. "Whereas the official text provides only for 'reasonable [notification],' the legislation adopted in California explicitly sets out the requirements for notice both to the debtor *and* to the general public when a public sale is to be held." (*Ford Motor Credit Co.* v. *Price, supra,* 163 Cal.App.3d 745, 750.) Hence, there will surely be sales of foreclosed personalty for which the advertising requirement will be wholly satisfied by giving notice by publication as specified in section 9504, subdivision (3).

Failure to comply strictly with the notice-by-publication requirement is fatal to a contention of compliance with section 9504, subdivision (3). (*Ford Motor Credit Co.* v. *Price, supra,* 163 Cal.App.3d at pp. 750-751.) Thus, the minimum advertising required to make the publicity aspect of a sale of foreclosed collateral commercially reasonable is the notice given by publication. But if placing the required legal notice is not a commercially reasonable method of informing potential buyers of the sale's time and place, the sale will fail to meet the requirements of subdivision (3) of section 9504.

We find support for our view that giving proper notice does not necessarily make a sale's publicity aspect commercially reasonable in the Uniform Land Security Interest Act (7A West's U. Laws Ann. (1994 supp.) U. Land Security Interest Act, p. 207 et seq.), which was promulgated in 1985. Section 509, subdivision (a), of the Uniform Land Security Interest Act requires that "every aspect of the sale, including the method, *advertising,* time, place, and terms, must be reasonable." (7A West's U. Laws Ann., *supra,* at p. 247, italics added.) The Uniform Land Security Interest Act's dispositional language mimics the requirement in the Uniform Commercial Code's official text that "every aspect of the disposition including the method, *manner,* time, place and terms must be commercially reasonable" (3B West's U. Laws Ann., *supra,* U. Com. Code, § 9-504, subd. (3), p. 127, italics added), but replaces *manner* with *advertising.* Each uniform law contains, in a separate sentence, a distinct requirement of proper notice, a grammatical and functional separation of notice and reasonableness mirrored in subdivision (3) of California Uniform Commercial Code section 9504.

Naturally, neither the official Uniform Commercial Code text nor that of the Uniform Land Security Interest Act can be considered to divine what the

California Legislature intended in 1963 with regard to personal property. But the parallels in structure between the uniform acts and the California Uniform Commercial Code, and the specific reference to advertising in the Uniform Land Security Interest Act, reinforce our conclusion that fulfilling the notice provisions of section 9504, subdivision (3), does not automatically satisfy that subdivision's separate requirement that the sale's advertising aspect be commercially reasonable.

Our conclusion that the Legislature did not intend to deem the advertising aspect of every sale commercially reasonable merely because the notice requirements are met is supported by the canon that the courts "should construe every statute with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness." (*Clean Air Constituency* v. *California State Air Resources Bd.* (1974) 11 Cal.3d 801, 814 [114 Cal.Rptr. 577, 523 P.2d 617].) ▆ The purpose of the Uniform Commercial Code, in California and elsewhere, was to create a statutory scheme that would yield the fairest and most efficient framework possible for transactions involving personalty and fixtures.

As regards fairness, concepts of reasonableness and good faith are immanent in the code. "[A] basic principle running throughout [the Uniform Commercial Code] . . . is that in commercial transactions good faith is required in the performance and enforcement of all agreements or duties." (1 West's U. Laws Ann. (1994 supp.) U. Com. Code, com. to § 1-203, p. 30); see also Cal. U. Com. Code, § 1203, & com. thereto.)

As regards efficiency, the code's article 9 replaced a clutch of security devices—pledges, conditional sales, chattel mortgages, trust receipts, and the like—with a single device, the security interest, the purpose of which was to facilitate secured transactions in personalty and fixtures. (See 2 White & Summers, *op. cit. supra,* § 23-1, pp. 241-242.) As the Court of Appeal herein explained, a consortium of academics, lawyers, and business interests reviewed the Uniform Commercial Code extensively and recommended to the Legislature that a modified version be enacted in California. (Pt. 1 of the Sixth Progress Rep. to the Leg. by the Sen. Fact Finding Com. on Judiciary (1959-1961) the Uniform Commercial Code, 1 appen. to Sen. J. (1961 Reg. Sess.).) This 845-page report (Sixth Progress Report) is the authoritative source of legislative history for section 9504, subdivision (3), and it reflects the great care that was given to drafting the California Uniform Commercial Code.

The Sixth Progress Report contains the final report of the State Bar's Subcommittee on article 9. That panel supported the proposed statutory

scheme because it would "provide[ ] for the creation of security interests with a minimum of formalities and restrictions, in recognition of present-day [business] needs." "In short," the panel explained, "the Article provides a simple and unified structure within which present-day financing on the basis of chattel security can be accomplished with less cost and with greater certainty." (Sixth Progress Rep., *supra,* at p. 397.) This idea was codified in the California Uniform Commercial Code's general provisions. (§ 1102, subd. (2)(a).)

Clearly, fairness and efficiency would both suffer from a rule that giving notice in an obscure publication always will satisfy the advertising aspect of a reasonable sale of foreclosed collateral as long as the other notice requirements have been met. Such a rule would often serve the interest of no one except possibly the foreclosing secured party.

Having set forth the law, we return to the matter at bench.

The inquiry whether a sale was commercially reasonable under section 9504, subdivision (3), including whether it was adequately publicized, is intensively factual and "the answer depends on all of the circumstances existing at the time of the sale." (*Clark Equipment Co.* v. *Mastelotto, Inc., supra,* 87 Cal.App.3d 88, 96.) A reviewing court must not disturb a trial court's factual findings or conclusion on this question unless no substantial evidence supports them. (*Peery* v. *Superior Court* (1981) 29 Cal.3d 837, 845 [176 Cal.Rptr. 533, 633 P.2d 198].)

In this case, substantial evidence supported the trial court's conclusion that the Phoenix newspapers, with their limited circulation, did not provide a forum likely to bring bidders and a fair price for the foreclosed aircraft, and the sale hence was commercially unreasonable. (See *General Elec. Credit* v. *Durante Bros., etc.* (1980) 79 A.D.2d 509 [433 N.Y.S.2d 574, 576] ["the newspaper selected for advertising was clearly not the most appropriate one for reaching the intended market."].) But as stated, in another case involving different collateral the trier of fact may find that giving the required legal notice alerted the relevant market to the sale and thereby satisfied the requirement of adequate promotion.

Our decision does not end these proceedings, however. As mentioned *ante,* page 1226, the Court of Appeal's judgment made it unnecessary for that court to address a number of defendant's claims of error. The Court of

Appeal's judgment is reversed and the cause is remanded to consider defendant's other claims.

Lucas, C. J., Kennard, J., Arabian, J., Baxter, J., George, J., and Werdegar, J., concurred.

The petition of appellant ITT Commercial Finance Corp. for a rehearing was denied February 23, 1995.