[No. B099094. Second Dist., Div. Four. Apr. 30, 1997.]

WILLIAM GIFFORD, Plaintiff and Appellant, v.
J & A HOLDINGS, Defendant, Cross-complainant and Respondent;
ESCROW EXCHANGE, INC., Cross-defendant and Respondent.

**COUNSEL**

Gross, Gross & Simon and Marc Dempsey Gross for Plaintiff and Appellant.

Hill, Farrer & Burrill, Kevin H. Brogan, Dean E. Dennis and Jennifer Cook Lewis for Defendant, Cross-complainant, and Respondent.

Allen S. Moss for Cross-defendant and Respondent.

**OPINION**

**VOGEL (C. S.), P. J.—**

### INTRODUCTION

Plaintiff William Gifford (plaintiff) sold produce on credit to Salad Works. Salad Works sold all its assets to defendant J & A Holdings, a

California corporation (J & A). The Bulk Sales Law (Cal. U. Com. Code, § 6101 et seq.)[1] required that, in order to protect creditors of Salad Works, notice of the intended sale be published and recorded at least 12 business days prior to the sale. (§§ 6104, 6105.) Contending that J & A failed to comply with the notice requirements, plaintiff brought this action for damages (§ 6107, subd. (a)) to recover from J & A $72,000 still owed to plaintiff by Salad Works. Following nonjury trial upon stipulated facts and brief testimony, the trial court rendered judgment for J & A. The court concluded J & A complied with the notice requirements or in the alternative made a good faith and commercially reasonable effort to comply. (§ 6107, subd. (c).) We reverse. The notice was recorded less than 12 business days before the date of anticipated sale specified in the notice. We conclude this was defective notice, and the attempt to cure the defect by merely postponing, without notice, the closing of escrow was not a commercially reasonable means of satisfying the statute's purpose.

FACTUAL, PROCEDURAL AND LEGAL BACKGROUND

*Brief Overview of Bulk Sales Law*

Section 6104 requires the buyer of a business to "(b) Give notice of the bulk sale in accordance with Section 6105 [and] [¶] (c) Comply with Section 6106.2 if the bulk sale is within the scope of that section." Section 6105 sets forth the notice requirements. Section 6106.2 provides a procedure for paying creditors' claims. If the transaction is through an escrow, section 6106.2 requires the escrow agent to apply the cash consideration for the purchase to pay the debts of the seller for claims due and payable before the date of the bulk sale, if such claims were timely filed on or before the day specified in the notice as the last day for filing claims. Section 6105, subdivision (a) requires the notice to state, among other matters, (par. 4) "the place and the anticipated date of the bulk sale," and, (par. 5) if section 6106.2 applies, the matters required by section 6106.2, subdivision (f). The latter requires the notice to state "the name and address of the person with whom claims may be filed and the last date for filing claims, which shall be the business day before the date stated in the notice pursuant to paragraph (4) of subdivision (a) of Section 6105." Section 6105, subdivision (b) requires that "At least 12 business days before the date of the bulk sale, the notice shall be: [¶] (1) Recorded in the office of the county recorder in the county . . . in which the tangible assets are located . . . . [¶](2) Published at least once in a newspaper of general circulation published in the judicial district in this state in which the tangible assets are located . . . ." Section

---

[1]All further statutory references are to the California Uniform Commercial Code unless otherwise indicated.

6107, subdivision (a) provides that a buyer who fails to comply with the requirements of section 6104 shall be liable to the claimant in the amount of the claim, reduced by the amount the claimant would not have realized if the buyer had complied. Section 6107, subdivision (c) provides that "A buyer who made a good faith and commercially reasonable effort to comply with the requirements of Section 6104 . . . is not liable to creditors for failure to comply with the requirements of Section 6104."

### *Brief Chronology of Notice*

Notice of the sale was published in a newspaper on September 28, 1993. The notice stated the date of the anticipated sale was October 15 and the last day to submit creditors' claims to the escrow agent was October 14. Notice was not recorded with the county recorder, however, until October 4. The recorded notice similarly stated that October 15 was the date of the anticipated sale and October 14 was the last day to submit claims. October 15 was less than 12 business days from October 4. To attempt to remedy this notice problem, the parties to the sale delayed the closing of escrow until October 21, which was 12 business days from October 4. J & A did not publish or record a new notice, nor give any actual notice to plaintiff, of the new anticipated sale date or the delayed closing of escrow.

### *Detailed Facts*

J & A, the buyer of Salad Works, is a holding company formed in September 1993 solely for the purpose of acquiring the assets of Salad Works. Ali House-Leon was J & A's initial president and sole director. On behalf of J & A, she signed the purchase agreement, escrow instructions, and notice of sale, and she personally guaranteed the performance of J & A. She was also an employee of Salad Works, the employee responsible for placing orders for produce and preparing checks for payment of invoices. She personally placed most of the orders in this case which remained unpaid. She testified she was an employee of Salad Works and was supervised by Colin Huffman and Vince Valenzie. Valenzie, who was Huffman's uncle, had taken over the business by foreclosure. Plaintiff William Gifford, doing business as Produce Management Service, dealt almost daily with Ali House-Leon as the person placing orders for Salad Works between May and October 1993. Plaintiff, unaware of the impending sale of the business assets, continued to send produce to Salad Works right up to the day before escrow closed. Plaintiff testified that after the close of escrow he asked Ali House-Leon why, when she was dealing with him almost daily on behalf of Salad Works, she did not tell him the business was being sold. She told plaintiff then that she was told by "the owner" not to discuss the impending

sale with anyone. She similarly testified at trial that Huffman and Valenzie told her not to discuss the impending sale with anyone. Salad Works owed plaintiff $86,000 for the produce ordered and delivered. Plaintiff received partial payment in November and December 1993 which reduced the amount owed to $72,000.

On September 21, 1993,[2] Ali House-Leon on behalf of J & A, and Colin Huffman on behalf of Salad Works, executed the agreement that J & A would purchase all the assets of Salad Works. The purchase price was $85,000, with $10,000 to be deposited immediately into escrow and $75,000 at closing; an additional amount ($9,100) for stock in trade inventoried on the day before closing was paid outside escrow after close of escrow. The agreement expressly disclaimed any liability of J & A for Salad Works' accounts payable. The agreement recited that the sale shall be conducted in full compliance with the Bulk Sales law and the parties shall cooperate in that respect. It stated, "It is the intent of the parties to complete this transfer by October 5, 1993. This date shall be delayed only as necessary to comply with bulk transfer requirements."

An escrow was opened with Escrow Exchange, Inc.[3] The escrow instructions dated September 22 called for performance "On or before [sic] October 21, 1993, the date set forth in the below described NOTICE OF BULK TRANSFER." The instructions then stated, "NOTICE OF BULK TRANSFER, pursuant to Section[s] 6105 and 6107 of the California Commercial Code providing for transfer of the business . . . to be consummated on or after [sic] the 21st day of October, 1993, at Escrow Exchange, Inc., Escrow Department . . . ." The instructions directed the escrow officer to cause the notice of bulk transfer to be published and recorded as required by law.

The escrow officer, Timothy Finerty, selected October 15 as the anticipated sale date based upon information from a newspaper of general circulation as to how soon the notice could be published. On September 22 he faxed a completed notice to creditors of bulk sale form to the attorney for J & A, Lou Flores, requesting that the faxed copy not be signed, rather that a photocopy be made of the faxed copy and the "hard copy" be mailed back as soon as possible. Flores returned a fax copy to Finerty, but not until September 27 did Flores send Finerty a hard copy of a notice, signed by Ali House-Leon for J & A, which stated that the anticipated sale date was October 15 and the last day for filing creditors' claims with the escrow was October 14. The notice was timely published in a newspaper of general circulation, the San Pedro News Pilot, on September 28.

---

[2]All date references hereafter are in 1993.

[3]Plaintiff did not sue Escrow Exchange, Inc. J & A cross-complained against Escrow Exchange, Inc., for declaratory relief and implied indemnity.

On September 30 the escrow officer sent Flores a note and attached an original notice to be signed by Ali House-Leon. He stated, "Please be advised that the fax copy was not good enough for recording. Also, when signed by Ms. House-Leon, please return to me via Federal Express as this has got to get recorded as soon as possible." Flores himself caused the notice to be recorded on October 4. The recorded notice stated the anticipated sale date was October 15 and the last day for filing claims was October 14.

No additional notice was published or recorded. The closing of escrow was postponed, however, until October 21, which was 12 business days from October 4. Although the notice which was published and recorded stated that the last day for filing creditors' claims was October 14, Finerty testified that in his experience handling bulk sales escrows, if a claim is filed after the deadline but before escrow closes, it is paid if not disputed. In this very case another creditor, Vaughan Paper & Packaging, filed a claim for $3,370 on October 15, one day late, but it was paid in escrow after Huffman's approval. Part of J & A's defense at trial was a contention that if plaintiff had filed a late claim before closing of escrow, it would have been paid.

Plaintiff did not file a claim with escrow. Plaintiff subscribed to a commercial service, McCord's Daily Notification Sheet, which provides daily notices to clients of notices of intended bulk transfers which have been recorded. McCord's October 12 issue listed the notice regarding this sale which was recorded on October 4. It was stipulated, however, that plaintiff received his McCord's by second class mail anytime from a day to a week or two after the date of issue. It was stipulated that plaintiff "first learned of the sale of Salad Works on October 25, 1993, after the sale had closed." "On October 25, 1993, [plaintiff] telephoned Escrow, listed in McCord's, and spoke with Tim Finerty who told [plaintiff] that the sale had closed on October 21, 1993."

The trial court held J & A complied with the Bulk Sales Law. It ruled that the 12-day period for recording the notice is to be measured back from the "date of the bulk sale," which in this case was the October 21 closing of escrow, rather than from the "anticipated date of the bulk sale," October 15, as stated in the notice. The court ruled in the alternative that postponing the closing of escrow to provide a 12-day period from the recording of the notice was a good faith and commercially reasonable effort to comply with the notice requirements.

The judgment provides that plaintiff take nothing from J & A, and that J & A take nothing on its cross-complaint against Escrow Exchange, Inc. Plaintiff obtained a default judgment against Salad Works and Colin Huffman for $72,000.

## DISCUSSION

Whether the notice was timely recorded involves interpretation of section 6105, a question of law for our independent review. (*Gardiner Solder Co.* v. *SupAlloy Corp., Inc.* (1991) 232 Cal.App.3d 1537, 1541 [284 Cal.Rptr. 206].) Whether the attempt to comply by postponing the escrow was in good faith and commercially reasonable is primarily a question of fact reviewable under the substantial evidence rule. (*Ford & Vlahos* v. *ITT Commercial Finance Corp.* (1994) 8 Cal.4th 1220, 1235 [36 Cal.Rptr.2d 464, 885 P.2d 877].)

### *Actual Compliance*

The present version of the Bulk Sales Law was enacted in 1990. It is based upon but differs in many respects from revised article 6, alternative B, of the Uniform Commercial Code as proposed by the National Conference of Commissioners on Uniform State Laws and the American Law Institute in 1989. (See 3 Witkin, Summary of Cal. Law (9th ed. 1996 supp.) Sales, § 212, p. 25; *Monastra* v. *Konica Business Machines, U.S.A., Inc.* (1996) 43 Cal.App.4th 1628, 1631, fn. 1, 1643, fn. 9 [51 Cal.Rptr.2d 528] (hereafter *Monastra*); U. Com. Code com. (1990 addition) foll. 23B West's Ann. Cal. Com. Code (1997 pocket supp.) § 6101, pp. 212-213; cf. 2C West's ULA U. Com. Code (1991) rev. art. 6, Alternative B, pp. 9-47.) Significant and distinctive features of the California law include reliance on published and recorded notice rather than individual notice to known creditors (§ 6105, subd. (b); *Monastra, supra*, 43 Cal.App.4th at p. 1641) and detailed procedures for paying creditors' claims through escrow. (§§ 6106.2, 6106.4; 3 Witkin, *op. cit. supra*, Sales, § 219, pp. 29-30.) ■ "The central purpose of the bulk sales statutes is to afford a merchant's creditors an opportunity to satisfy their claims *before* the merchant can transfer his or her assets and vanish with the sale proceeds." (*Monastra, supra*, 43 Cal.App.4th at p. 1642, original italics.)

Section 6106.2, subdivisions (b) and (f) require that a creditor's claim be timely filed. It is the duty of the escrow agent "to apply the cash consideration in accordance with this section so far as necessary to pay those debts of the seller for which claims are due and payable on or before the date of the bulk sale and are received in writing on or prior to the date specified as the last date to file claims with the person designated in the notice to receive claims. This duty of the buyer or escrow agent runs to each claimant timely

filing the claim." (§ 6106.2, subd. (b).) "The notice shall state, in addition to the matters required by Section 6105, the name and address of the person with whom claims may be filed and the last date for filing claims, which shall be the business day before the date stated in the notice pursuant to paragraph (4) of subdivision (a) of Section 6105. Claims shall be deemed timely filed only if actually received by the person designated in the notice to receive claims before the close of business on the day specified in the notice as the last date for filing claims." (§ 6106.2, subd. (f).)

In light of these elements of the statutory scheme, we conclude the failure to record the notice at least 12 business days before the *anticipated date of the bulk sale as designated in the notice* was a failure to comply with the notice requirements of the law. J & A urges a literal interpretation of section 6105 (and the trial court agreed) as follows: subdivision (a)(4) requires the notice to state the *anticipated date* of the bulk sale, but subdivision (b) requires the notice to be recorded and published 12 business days before *the date of the bulk sale*. These are two different terms, J & A argues, and the Legislature must be presumed to have intentionally distinguished them. (Citing *Zavala* v. *Board of Trustees* (1993) 16 Cal.App.4th 1755, 1762 [20 Cal.Rptr.2d 768] [" '[W]hen different words are used in contemporaneously enacted, adjoining subdivisions of a statute, the inference is compelling that a difference in meaning was intended.' " (Italics omitted.)]; also citing § 6102, subd. (a)(7) ["date of the bulk sale" expressly defined].) Therefore, J & A contends, the failure to record the notice earlier is irrelevant because the actual date of the bulk sale was postponed until 12 business days after the recordation. J & A contends the statute requires only that recordation be 12 business days before the actual sale and, therefore, J & A complied literally with the statute.

The meaning of the words in a statute can be determined only by the context in which the words are used, "that is, with reference to such purpose as may be discerned from examining the entire enactment of which the words are a part. . . . The courts resist blind obedience to the putative 'plain meaning' of a statutory phrase where literal interpretation would defeat the Legislature's central objective." (*Leslie Salt Co.* v. *San Francisco Bay Conservation etc. Com.* (1984) 153 Cal.App.3d 605, 614 [200 Cal.Rptr. 575].) " ' "The mere literal construction of a section in a statute ought not to prevail if it is opposed to the intention of the legislature apparent by the statute . . . ." ' " (*Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 259 [104 Cal.Rptr. 761, 502 P.2d 1049].)

The purpose of this statutory scheme is to protect creditors by giving them notice in time to take action before the transfer takes place. It

provides a mechanism for the filing and payment of claims through escrow. It requires that creditors be notified where to file claims and the date of the last day to file claims. It determines such "last day" by reference to the *date of anticipated sale as specified in the notice*: the last day for filing claims is the business day before the date specified in the notice as the anticipated sale date. The statute requires payment only if a claim is timely filed. Reading section 6105, subdivision (b) in light of the legislative intent apparent from the statutory scheme, we hold the notice must be published and recorded at least 12 business days before the anticipated sale date as specified in the notice. Otherwise, creditors do not have sufficient time to file a timely claim.[4] Here the notice stated the anticipated sale date was October 15 and the last day to file claims was October 14, but the notice was not recorded until October 4, less than 12 business days before the date specified in the notice. J & A therefore did not give timely recorded notice of the sale.

### Good Faith Commercially Reasonable Effort

The trial court held alternatively that J & A is still not liable, because J & A "made a good faith and commercially reasonable effort to comply with the requirements" as provided by section 6107, subdivision (c).[5] The trial court relied on the following: (1) the purchase agreement and escrow instructions expressed the parties' intent to comply fully with the Bulk Sales Law, and (2) postponing the escrow was substantial compliance with the law.

"The buyer has the burden of establishing the good faith and commercial reasonableness of the effort." (§ 6107, subd. (c).) Commercial reasonableness is not expressly defined in the statute, but has been defined elsewhere to include commonly accepted commercial practices of responsible businesses which afford all parties fair treatment. (*Ford & Vlahos* v. *ITT Commercial*

---

[4]The Uniform Commercial Code version (U. Com. Code, § 6-105(5)) gives 45 days. The Uniform Commercial Code comment states, "The period was extended from the 10 days afforded by the 1987 Official Text to provide ample time for claimants to receive or discover the notice and to take any action that the law permits to collect their claims from the seller." (2C West's ULA, U. Com. Code, *supra*, rev. art. 6, alternative B, com. 5 to § 6-105, p. 27.)

[5]The Uniform Commercial Code comment to the comparable provision (U. Com. Code, § 6-107(3)) states, "This defense is available to buyers who establish that they made a good faith effort to comply with the requirements of this Article . . . . When a buyer makes a good faith effort to comply . . . the injury caused by noncompliance is likely to be *de minimis*. In any event, the primary responsibility for satisfying claims rests with the creditors, and this Article imposes no greater duty upon buyers who attempt to comply . . . than to make a good faith effort to do so." (U. Com. Code com. (1990 addition) 23B West's Ann. Cal. U. Com. Code (1997 pocket supp.) foll. § 6107, p. 230.)

*Finance Corp., supra,* 8 Cal.4th at pp. 1228, 1229, 1234; see *Grumman Credit* v. *Rivair Flying Service* (Okla. 1992) 845 P.2d 182, 185.) Good faith and commercial reasonableness primarily involve questions of fact, based on all the circumstances; the trial court's findings must be upheld if supported by substantial evidence. (*Ford & Vlahos* v. *ITT Commercial Finance Corp., supra,* 8 Cal.4th 1220, 1235.) We find there is no substantial evidence to support the conclusion of good faith and commercial reasonableness in the circumstances of this case.

The factors cited by the trial court are insubstantial. First, the trial court's finding that there was "substantial compliance" with the statute is at least partially infected by its erroneous interpretation of the statute when it found *actual* compliance. Substantial compliance means actual compliance with respect to the substance essential to every reasonable objective of the statute. (*Assembly* v. *Deukmejian* (1982) 30 Cal.3d 638, 649 [180 Cal.Rptr. 297, 639 P.2d 939].) We concluded, *ante,* that the statute requires 12 business days' notice in order to give creditors 11 business days to file claims before *the deadline specified in the notice.* To attempt to cure an untimely recording of notice merely by postponing the closing of escrow does not address the substance of the statute's objective of giving creditors time to file a claim before the date specified in the notice. Second, the parties' earlier expressed intent to comply with the Bulk Sales Law is insignificant in light of the fact that they subsequently became aware the notice was not timely recorded; they then *knew* that they had not complied with the law. When J & A and its agents learned the notice could not be recorded 12 business days before the anticipated date stated in the notice, they should have selected a new date and published and recorded a new notice. J & A, through its escrow agent, *knew* that the notice was not timely recorded. J & A, through its president Ali House-Leon, *knew* plaintiff was a major creditor of Salad Works, because House-Leon, as an employee of Salad Works, placed the orders. Knowing that notice had not been timely recorded, and knowing the identity of Salad Works's major creditor, J & A sat silently by, neither recording a new notice nor giving actual notice to the known creditor. House-Leon continued to order produce on credit from plaintiff and said nothing about the impending sale. Under all the circumstances there is no substantial evidence of a good faith and commercially reasonable effort to comply with the Bulk Sales Law.

We emphasize that a new notice need not be published and recorded every time the anticipated date of sale must be postponed by glitches in the escrow process. We hold only that notice must be published and recorded at least 12 business days before the date specified in the notice as the anticipated date of sale, which specification determines the last day for filing claims. That is

the purpose of the notice which, in turn, advances the objective of the Bulk Sales Law.

J & A's after-the-fact assertion that an untimely claim would have been honored had it been submitted before escrow closed is cavalier and no more than a belated rationalization. Indeed, J & A's argument is not credible in light of the fact that the amount then due to plaintiff, over $86,000, exceeded the entire purchase price of $85,000 which was to be deposited in escrow. A creditor who learns belatedly that the deadline for filing claims as stated in the notice has passed should conclude, especially after reading section 6106.2, subdivisions (b) and (f), that filing a late claim would be useless.

### Causation

Finally, J & A contends the defective recording did not ultimately affect plaintiff because even if J & A had republished and renoticed on October 4 for a new anticipated sale date of October 21, plaintiff would not have benefited, because plaintiff did not receive notice from McCord's until October 25, after escrow had closed. J & A contends plaintiff's claim would have to be reduced to zero because plaintiff would not have "realized [on his claim] if the buyer had complied." (Citing § 6107, subd. (a).) This argument lacks merit for several reasons. It was not relied upon by the trial court, perhaps because it was not pleaded. It is based on speculation, because it could just as well be argued that if the notice had been recorded on September 28 (like the publication) plaintiff might have received an earlier issue of McCord's in time to file a claim. The requirement that the claim be "reduced by any amount that the claimant would not have realized if the buyer had complied" (§ 6107, subd. (a)) does not support J & A's "causation" defense. That language appears directed to the situation where the claimant would not have been paid, in full or at all, because the amount on deposit in escrow was insufficient to pay all creditors, and other creditors had priority. (§ 6106.4.)

### CONCLUSION

J & A did not comply with the notice requirements of the Bulk Sales Law, nor act in a commercially reasonable manner to attempt to comply. The trial court should conduct further proceedings to determine plaintiff's damages for J & A's failure to comply (§ 6107) and the liability if any of Escrow Exchange, Inc., to J & A on J & A's cross-complaint for indemnity.

## DISPOSITION

The judgment is reversed and the trial court is directed to conduct further proceedings consistent with the views expressed in this opinion. Plaintiff shall recover costs on appeal from defendant J & A Holdings.

Baron, J., and Aranda, J.,* concurred.

---

*Judge of the Municipal Court for the South Bay Judicial District, assigned by the Chief Justice pursuant to article VI, section 6 of the Caifornia Constitution.