[No. B108802. Second Dist., Div. Six. Sept. 15, 1997.]

JEFFREY L. CLARK, Plaintiff and Respondent, v.
EZN, INC., et al., Defendants and Appellants.

854

**Counsel**

Vorzimer, Garber, Masserman & Ecof, Lawrence C. Ecoff and Lynn R. Levitan for Defendants and Appellants.

Stanley W. Abbott for Plaintiff and Respondent.

**Opinion**

**YEGAN, J.**—EZN, Inc., a Kentucky corporation, and A. W. Morgan (Debtor) appeal from a $143,574 deficiency judgment entered in favor of Jeffrey

L. Clark (Creditor.) We affirm. Although the foreclosure sale was not conducted in a commercially reasonable manner, substantial evidence supports the trial court's finding made pursuant to California Uniform Commercial Code, section 9504, subdivision (2)(c), that the value of the loan security ($150 per unit) was greater than the foreclosure sale price ($25 per unit). As we shall explain, the recent California Supreme Court case of *Ford & Vlahos v. ITT Commercial Finance Corp.* (1994) 8 Cal.4th 1220 [36 Cal.Rptr.2d 464, 885 P.2d 877], does not speak to the situation where the trial court imputes a fair sales price and renders a judgment thereon.[1]

### Facts and Trial Court Proceedings

Debtor is the inventor of a foldable steel ramp that attaches to the back of a truck tailgate. The ramps are manufactured by EZN Proprietary, Ltd., an Australian corporation. Debtor distributes the ramps through EZN, Inc., a Kentucky corporation.

Debtor defaulted on a $225,000 promissory note and security agreement. The agreement recited that the 500 truck ramps were valued at $450 each. Creditor obtained a prejudgment writ of possession and sold 255 ramps in the ordinary course of business for $450 per ramp. The remaining 245 ramps were sold at a public auction. Creditor, the sole bidder at the auction, purchased the ramps for $25 apiece and sued for the loan balance.

Debtor defended on the ground that the ramps were not sold in a commercially reasonable manner. (§ 9504, subd. (3).) On the day set for trial, he sought leave to file a cross-complaint. The trial court denied the motion and received the following evidence.

Debtor, EZN Proprietary, Ltd., and Creditor entered into a distributor agreement granting Creditor the exclusive right to sell the ramps in California with the exception of Imperial, San Diego and Riverside Counties. Creditor created EZN Ramps of California, Inc., and sold more than 1,000 ramps. He spent $10,000 a month on national advertising, sold 500 distributorships, and maintained a toll-free Watts line for the distributors.

Thereafter, Debtor experienced production problems and borrowed $225,000 from Creditor. Debtor executed a note and pledged 500 ramps as collateral. The security agreement stated that the value of each ramp was $450.

After Debtor defaulted, Creditor sued on the note, obtained a writ of possession, and took possession of the ramps. The ramps were transported to

---

[1]All statutory references are to the California Uniform Commercial Code unless otherwise stated.

Goleta and stored in a warehouse. Creditor published a notice of sale in the Santa Barbara News Press, but did not advertise or tell distributors about the auction. As indicated, the 245 ramps were auctioned and Creditor, the sole bidder, purchased the ramps for $25 each.

Debtor contended that the ramps were sold below value because Creditor did not advertise or invite distributors to the auction. It cost $450 to manufacture a ramp and Creditor usually sold the ramps for $595 each.

The trial court was concerned that Creditor did not advertise or invite distributors to the auction. It impliedly found that the sale was not commercially reasonable and increased the sale price from $25 to $150 per unit. (§ 9504, subd. (2)(c).) The court credited Debtor $36,750 (245 ramps x $150). He also received a $114,750 credit for the ramps sold before the auction (255 ramps x $450 per ramp), and a $7,500 credit on the bond which was exonerated. The trial court entered judgment in the principal amount of $225,000, subtracted $159,000 in credits, and awarded interest, costs, and attorney's fees (approximately $77,574).

### Commercially Reasonable Sale

■ Section 9504, subdivision (3), provides that a creditor may not recover a deficiency judgment unless the creditor gives notice of sale and conducts the sale in a commercially reasonable manner. This section requires that the notice of sale be personally served or mailed to the debtor, at least five days before the sale. It also requires that a notice of sale be published in a paper of general circulation in the county where the sale is to be held, at least five days before the sale. Creditor complied with the notice requirements. (*Atlas Thrift Co.* v. *Horan* (1972) 27 Cal.App.3d 999, 1009 [104 Cal.Rptr. 315].)

In *Ford & Vlahos* v. *ITT Commercial Finance Corp.*, *supra*, 8 Cal.4th 1220, the Supreme Court decided a "narrow question of law" concerning notice and advertising of the sale. (*Id.* at p. 1223.) It held that the requirements of notice and of commercial reasonableness are "separate but related concepts under the California Uniform Commercial Code." (*Id.* at p. 1227.) Where the market is limited or specialized, the creditor must advertise before the sale. "[T]he purpose of requiring adequate advertising of a foreclosure sale is to force the secured party to ensure the auction is well attended by legitimate bidders, so that the highest commercially reasonable price for the collateral will be obtained." (*Id.* at p. 1233.)

■ Creditor sold 255 ramps before the auction. The trial court found that the ramps were "fungible" goods and that a notice of sale was not required.

It did not err. Section 9504, subdivision (3), provides that notice of sale need not be given if the collateral is "of a type customarily sold on a recognized market . . . ." Creditor's distributorship, EZN Ramps of California, Inc., was not only a "recognized market" but the only market for most of California. The sale was commercially reasonable and did not prejudice Debtor. (*Aspen Enterprises, Inc.* v. *Bodge* (1995) 37 Cal.App.4th 1811, 1825 [44 Cal.Rptr.2d 763].) Debtor received full credit ($450 per ramp) for each ramp sold.

Debtor argues that the remaining 245 ramps were not sold in a commercially reasonable manner. Our Supreme Court has held that advertising is the "sine qua non to attendance at an auction . . . . 'Common sense tells us that the larger the attendance at a public sale of collateral, the more likely it is that there will be competitive bidding. Competitive bidding helps to assure that the purchase price approximates the fair market value of the property and also prevents a [secured party] from exaggerating his deficiency by underbidding.' Hence, '[o]ne of the most important elements of commercial reasonableness is the duty to surround the sale with publicity sufficient to attract a "lively concourse of bidders."' [Citation.]" (*Ford & Vlahos* v. *ITT Commercial Finance Corp., supra*, 8 Cal.4th 1220, 1230.)

At trial, Creditor argued that he was not required to advertise because the ads would undermine his business and force him to compete against himself. The trial court was troubled "that the only notice was to Santa Barbara [C]ounty where there [were] no distributors or potential market of purchaser[s]." The court increased the sale price from $25 to $150 per unit and entered judgment for Creditor.

### The 1990 Statutory Change

Citing *Ford & Vlahos* v. *ITT Commercial Finance Corp., supra*, 8 Cal.4th 1220, Debtor argues that the judgment must be reversed because Creditor did not advertise. We disagree. The auction sale in that case occurred in 1987. The California Supreme Court did not consider section 9504, subdivision (2)(c). "[A] decision is not authority for an issue not considered in the court's opinion. [Citations.]" (*People* v. *Heitzman* (1994) 9 Cal.4th 189, 209 [37 Cal.Rptr.2d 236, 886 P.2d 1229].)

Here, the trial court found there is "a limited market and specialized market for this product and that's what we're wrestling with." To satisfy section 9504, subdivision (3), Creditor was required to advertise the sale and protect against an unfair low-auction price. (*Ford & Vlahos* v. *ITT Commercial Finance Corp., supra*, 8 Cal.4th at pp. 1232-1233; *Security Pacific*

*National Bank* v. *Geernaert* (1988) 199 Cal.App.3d 1425, 1431 [245 Cal.Rptr. 712].) Creditor's advertising was nil.

That, however, is not the end of the analysis. ■ In 1990, the Legislature amended the rule on deficiency judgments. Section 9504, subdivision (2)(c), now states in pertinent part: "If the secured party has provided notice to the debtor pursuant to subdivision (3), . . . *but has not proceeded in a commercially reasonable manner in the disposition of the collateral*, the debtor is liable, subject to paragraphs (b) and (d), for any deficiency only if the balance of the indebtedness immediately before the disposition exceeds the amount that the secured party establishes would have been realized had the disposition of the collateral by the secured party pursuant to this section been conducted in conformity with the conditions set forth in clause (i) of paragraph (b), and the liability is limited to the excess." (Italics added; see *Canadian Commercial Bank* v. *Ascher Findley Co.* (1991) 229 Cal.App.3d 1139, 1149-1150, fn. 8 [280 Cal.Rptr. 521].)

Witkin describes the statutory change as follows: "If the secured party has provided any required notice to the debtor, but has not proceeded in a commercially reasonable manner in disposing of the collateral, the debtor is liable . . . for any deficiency only if the balance of the indebtedness immediately *before* the disposition exceeds the amount which the secured party establishes would have been realized had the disposition been conducted in conformity with U.C.C. 9504(2)(b), *supra*, and the *liability is limited to the excess*." [Citing § 9504, subd. (2)(c).]" (3 Witkin, Summary of Cal. Law (9th ed., 1996 pocket supp.) Secured Transactions in Personal Property, § 74, p. 264.)

■ The trial court was aware of the statutory change and stated: "[I]f the note were for $20 and they [Creditor] sold the items for $5, and it should have brought $10, there should still be a deficiency judgment, as I read this, for $10." Discrediting Debtor's testimony, the court said: "I can't believe it [the ramps] would fetch the wholesale value . . . . I believe they could have sold for $150 apiece."

Creditor contends that the judgment should be affirmed because the value of the ramps was probably less than $150 per unit. We agree. When Creditor took possession of the ramps, the manufacturer was in bankruptcy. An Australian liquidator offered to sell the ramps for $40 apiece. The auctioneer told Creditor that the ramps, sold in bulk, would sell between $10 and $30 apiece. Creditor testified that the ramps needed repair and had warranty problems. He was inundated with customer complaints. Parts were hard to find because Debtor was in the process of moving the production plant to

Mexico. Debtor has not demonstrated as a matter of law that the trial court's factual finding is erroneous. (E.g., *Brewer* v. *Simpson* (1960) 53 Cal.2d 567, 584 [2 Cal.Rptr. 609, 349 P.2d 289]; *In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 [122 Cal.Rptr. 79, 536 P.2d 479]; *Hasson* v. *Ford Motor Co.* (1977) 19 Cal.3d 530, 544 [138 Cal.Rptr. 705, 564 P.2d 857, 99 A.L.R.3d 158].)

*Cross-complaint*

Debtor contends that the trial court erred in denying leave to file a cross-complaint for fraud, conversion, and breach of contract. He claims that the cross-complaint was compulsory and "related" to the foreclosure. Creditor asserts that the cross-complaint is not a "related" cause of action because it seeks damages separate and apart from the loan obligation. A "related cause of action" is "a cause of action which arises out of the same transaction, occurrence, or series of transactions or occurrences as the cause of action which the plaintiff alleges in his complaint." (Code Civ. Proc., § 426.10, subd. (c).) We cannot say that the trial court abused its discretion as a matter of law. (E.g., *Crocker Nat. Bank* v. *Emerald* (1990) 221 Cal.App.3d 852, 862-864 [270 Cal.Rptr. 699].) Even if the trial court erroneously denied leave to amend, debtor has not been prejudiced thereby. The order denying leave to file the cross-complaint is without prejudice to Debtor's right to file a separate action.

The judgment is affirmed. Creditor is awarded costs on appeal. We reject the argument that the appeal is frivolous or warrants sanctions. (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179].)

Stone (S. J.), P. J., and Coffee, J., concurred.