**Khalid A. KARRIEM, Plaintiff,**

v.

**AMERICAN KENNEL CLUB,
et al., Defendants.**

**No. 96 Civ. 7219 (LAK).**

United States District Court,
S.D. New York.

Dec. 30, 1996.

Harry M. Stokes, Granite Springs, NY, for Plaintiff.

Joan M. Cresap, Assistant Attorney General, New York City, Dennis C. Vacco, Attorney General of the State of New York, Albany, NY, for Defendants Thomas Fisher and Richard Smith.

Ralph A. Cognetti, East Syracuse, for Defendants Steven A. Graham and Harland Kent.

Daniel Hanson, Ahmuty, Demers & McManus, Albertson, NY, for Defendants Finger Lakes Kennel Club and Gloria Knuppenburg.

Heidi M. Weiss, Oshman & Helfenstein, New York City, for Defendants American Kennel Club, James P. Crowley and Robert H. Slay.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Plaintiff, an African American man, is a professional dog handler who makes his living training and handling dogs at events sanctioned and regulated by the American Kennel Club ("AKC") and is subject to AKC disciplinary rules and procedures. On September 28, 1995, plaintiff arrived at an AKC sponsored event hosted by the Finger Lakes Kennel Club ("FLKC") at Sampson State Park in Seneca County, New York, where he became involved in a controversy concerning traffic control at the event with two New York State Park Police officers, defendants Thomas Fisher and Richard Smith. It is plaintiff's contention that Fisher and Smith selectively "persecuted" him because of his race. In the wake of this incident, plaintiff was subjected to disciplinary proceedings before a FLKC show bench committee which resulted in his suspension from the AKC for ninety days, allegedly with consequent loss of income. His appeal to the AKC pursuant to its disciplinary procedures was not successful. He now contends that the Park Police Officers, the AKC, the FLKC and several other individuals who acted on behalf of the kennel clubs in connection with these events conspired to deprive him of his constitutional rights including, *inter alia*, his right to equal protection of the laws and to procedural due process. He contends also that the AKC suspension constituted tortious interference with his contractual relations with third parties, that the AKC libeled him by disseminating defamatory information, and that the defendants' actions were wanton and wilful. Defendants Fisher and Smith have moved to dismiss the complaint for improper venue or to transfer the action to the Northern or

Western District of New York pursuant to 28 U.S.C. §§ 1404(a) or 1406(a).

## Venue

The principal point of dispute with respect to the propriety of venue in this District is whether a substantial part of the events or omissions giving rise to the claim arose here within the meaning of 28 U.S.C. § 1391(b)(2), as the defendants do not all arise in this District and there is no suggestion that there is no district in which venue may be laid under that provision. *See* 28 U.S.C. § 1391(b). The moving defendants contend that the operative events all occurred in Seneca County, while plaintiff rests on the fact that his appeal to the AKC was lodged and decided in New York County.

The 1990 amendment to Section 1391(b) clearly contemplates that a substantial part of the events giving rise to the claim may have occurred in more than one district. *Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 867 (2d Cir.1992). Hence, the fact that the events in Seneca County constitute the major locus of the dispute and gave rise to the subsequent events in New York County upon which the plaintiff relies is not alone fatal to plaintiff's contention that venue is properly laid in this District. Plaintiff complains also that defendant Crowley, secretary of the AKC, who acted in New York, rejected his appeal from the disciplinary action taken by the FLKC and that the AKC subsequently defamed him, evidently in publications issued from its New York headquarters.

While these New York City events clearly are subordinate to those that occurred in Seneca County, the Court is not inclined to hold that they are not a substantial part of the events giving rise to plaintiff's claim. It is unnecessary, however, to rule on the point. If venue were improper in this District, the Court would be empowered to transfer the action to the Western District pursuant to 28 U.S.C. § 1406(a). As the Court concludes, for the reasons stated below, that the action should be transferred in any case pursuant to

28 U.S.C. § 1404(a), the venue issue is immaterial.

## Transfer

Section 1404(a) of the Judicial Code provides that the Court may transfer any civil action for the convenience of parties and witnesses and in the interest of justice to any district in which it could have been brought. The factors informing the exercise of this discretion were set out by Judge Weinfeld in *Schneider v. Sears*, 265 F.Supp. 257, 263 (S.D.N.Y.1967), and include (1) the convenience to the parties, (2) the convenience to the witnesses, (3) the relative ease of access to sources of proof, (4) the availability of process to compel the attendance of unwilling witnesses, (5) the cost of obtaining willing witnesses, (6) the practical problems indicating where the case can be tried more expeditiously and inexpensively, and (7) the interests of justice. The balance of these considerations tips strongly in favor of transfer in this case.

To begin with, plaintiff is a resident of Virginia. Although he has historical contacts with the New York area and claims a secondary residence on Long Island, the fact remains that his day-to-day physical presence is elsewhere. His choice, as a non-resident, of this forum therefore is entitled to less weight than ordinarily would be the case.

The balance of the convenience of the parties manifestly favors transfer. All of the defendants save the AKC and Crowley reside in the Northern and Western Districts of New York.[1] And while plaintiff claims that a New York City forum would be more convenient to him than Rochester, Syracuse or Binghamton, that assertion is not very persuasive in view of his current residence in Virginia.

The considerations bearing on access to proof, in this age of easy photocopying of documents, turn most heavily on the availability of process to compel the attendance of unwilling witnesses. Plaintiff was involved in a series of events at Sampson State Park over a period of some time. To the extent

---

**1.** Seneca County forms part of the eastern border of the Western District and abuts the Northern District.

that non-party witnesses are identified whose testimony may prove significant, there is no reason to suppose that they are within the subpoena power of this Court, whereas they are quite likely to be within the subpoena power of either the Northern or Western District. Hence, this factor favors transfer as well. Neither side suggests that there may be non-party witnesses to anything relevant to the AKC's involvement in this matter.

Plaintiff argues that New York City would be a more convenient forum for several willing non-party witnesses. To the extent this is substantiated, it of course favors retention of the case here. Plaintiff, however, has overstated his case. Two of these witnesses, Mrs. Eddy Golt and Christiane Golt, reside in Maine and have no substantial convenience interest in a New York City forum. One, Mr. Smith, is an expert witness, whose convenience is immaterial according to settled principles. A fourth is the Director of the AKC's Investigations and Inspections Unit. In view of the AKC's lack of objection to transfer, plaintiff cannot rely on his convenience. Plaintiff's non-party witnesses whose convenience is material here and favors a New York forum therefore are two, one of whom resides in Connecticut and the other in New Paltz, New York.

Taking all of these considerations together, the Court concludes that the moving defendants have met their burden of overcoming the weight properly attached to plaintiff's choice of forum and demonstrating that a transfer would be in the interest of justice and serve the convenience of the parties and witnesses. The heavy preponderance of parties in the Seneca County area, the greater likelihood that unwilling witnesses could be compelled to appear in that area, and plaintiff's non-residence overcome plaintiff's preference, the presence here of the AKC and defendant Crowley, and the legitimate convenience interests of the non-party witnesses identified by plaintiff.

There remains the question whether the action might have been brought in the prospective transferee districts and, if so, the choice of destination. In a multidefendant case like this, an action "might have been brought" only in a district in which all defendants are amenable to process and in which venue would be proper for all of them. 15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER AND EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION AND RELATED MATTERS 2D § 3845, at 351 (1986).

In view of the fact that the incidents constituting the major part of the events at issue here—the encounter with the State Park Police and the FLKC disciplinary action—took place in the Western District of New York and form the basis for the subsequent events involving the AKC, there is no doubt that "a substantial part of the events or omissions giving rise to the claim occurred" in that district and that venue therefore would be appropriate there as to all defendants. 28 U.S.C. § 1391(b)(2). All defendants would be subject to service of process in an action filed anywhere in the state, the New York defendants by virtue of their residence and the one out-of-state defendant by virtue of his alleged tortious actions within the state.[2] See N.Y. CPLR §§ 302(a), subd. 2 (long arm jurisdiction based on tortious acts within the state),[3] 308, subd. 1 (natural persons may be served "within the state"), 311 (corporations served by delivery of process to appropriate representative). Hence, the action "might have been brought" in the Western District.

The action, however, could not have been brought in the Northern District because venue would not lie there. As Seneca County is in the Western District and nothing is alleged to have occurred in the Northern District, venue may not be premised on 28 U.S.C. § 1391(b)(2). Section 1391(b)(1),

**2.** Defendant Robert H. Slay is alleged to be a South Carolina resident. He is sued by reason of his alleged conduct at the 1995 FLKC show in Seneca County. (Am Cpt ¶¶ 25–26)

**3.** N.Y. CPLR § 302(a), subd. 2, confers long arm jurisdiction over persons committing tortious acts within the state except as to claims for

defamation. The defamation count in this complaint, however, is directed solely at AKC (Am Cpt ¶¶ 42–44) The out-of-state defendant, Robert H. Slay, is sued on the basis of his alleged actions at the 1995 FLKC dog show in Seneca County (id. ¶¶ 25–26) and therefore is amenable to process under N.Y. CPLR § 302(a), subd. 2.

which permits venue to be laid in any district in which a defendant resides if all defendants reside in the state does not apply because defendant Robert H. Slay is alleged to be a resident of South Carolina. And Section 1391(b)(3), which establishes venue where any defendant resides if there is no other district in which the action otherwise may be brought, is inapplicable in consequence of the availability of a forum in the Western District. Accordingly, the Court concludes that the Western District of New York is the only permissible transferee forum among those suggested by the defendants.

### Conclusion

For the foregoing reasons, this action is transferred to the United States District Court for the Western District of New York.

SO ORDERED.