Martin SCHECHTER, et ano., Plaintiffs,

v.

TAUCK TOURS, INC., Defendant.

TAUCK TOURS, INC., Third-party Plaintiff,

v.

UNITED STATES of America, Third-party Defendant.

No. 98 CIV. 4367 (LAK).

United States District Court, S.D. New York.

Aug. 24, 1998.

Mark D. Greenberg, Goldfarb & Greenberg, New York, NY, for Plaintiffs.

Costantino Suriano, Frank J. DeAngelis, Rodney E. Gould, Mound, Cotton & Wollan, New York, NY, for Defendant Tauck Tours, Inc.

Mary Jo White, United States Attorney, for Third–Party Defendant.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This is a motion to dismiss a personal injury case arising from a slip and fall in Volcanoes National Park in Hawai'i on the ground of *forum non conveniens* or, alternatively, to transfer the action to the District of Hawai'i.

### Facts

Plaintiff Martin Schechter and his wife, New York residents, booked a Hawai'ian tour with defendant Tauck Tours ("Tauck") through travel agents operating in New York. On or about May 15, 1995, Mr. Schechter allegedly slipped and fell in Volcanoes National Park on the island of Hawai'i while being led by Ronn Plomer, a Tauck tour guide. His counsel has given two accounts of the location of the accident. In affidavits submitted here and previously in the state court, he asserts that Mr. Schechter fell "on lava rock which he encountered as he disembarked from the tour bus." [1] The complaint, however, alleges that the fall occurred while "the defendants' tour guides led the plaintiff ... onto volcanic lava rocks." [2] In any case, plaintiffs claim that Mr. Schechter's fall, which occurred on federal property, was attributable to Tauck's negligence and sued Tauck, as well as the travel agents, in New York Supreme Court. Tauck there moved unsuccessfully for summary judgment and *forum non conveniens* dismissal. The travel agents obtained summary judgment and were dismissed from the action.

Tauck thereupon impleaded the United States, claiming that it is responsible, in whole or in part, for any liability that Tauck may have to the plaintiffs. The government removed the action to this Court on June 22, 1998. Shortly thereafter, Tauck filed the present motion.[3]

The record before the Court establishes that the plaintiffs and one or perhaps more

---

**1.** Greenberg Aff. ¶ 4. The Court notes that Mr. Greenberg's "affidavit" in fact is unsworn, as was the "affidavit" he submitted on a prior state court motion.

**2.** Cpt. ¶ 18.

**3.** The United States takes no position on the motion.

local treating physicians are the only likely percipient witnesses resident in New York. The other likely witnesses—Mr. Plomer, the bus driver who drove the Schechters to the park, and perhaps park officials responsible for the location—are not here, cannot be compelled to come here for trial, and almost surely reside in Hawai'i. Surely it stands to reason that any treating physicians in Hawai'i are available only in that state. Hence, if the case proceeds here, the case of necessity would be tried on the live testimony of the plaintiffs and their experts and the live testimony of the defendant's experts and any other witnesses whom the defendant can persuade to come to New York voluntarily.

## Discussion

■ Since the enactment of Section 1404(a) of the Judicial Code [4] "it is only when the more convenient forum is in a foreign country—or, perhaps, under rare circumstances, in a state court or a territorial court—that a suit brought in a proper federal venue can be dismissed on grounds of forum non conveniens." [5] Hence, if Tauck is entitled to transfer to the District of Hawai'i under Section 1404(a), there would be no occasion to consider its *forum non conveniens* motion.

### Where the Action "Might Have Been Brought"

■ The threshold question is whether the action might have been brought in Hawai'i,[6] a point not disputed by the plaintiffs but which nevertheless requires consideration of whether the district court in Hawai'i would have had venue and subject matter jurisdiction and could have obtained personal jurisdiction.[7] Venue quite obviously could have been laid in Hawai'i, as the accident giving rise to the suit occurred there.[8] Jurisdiction, however, is a somewhat more difficult question.

■ This case now is in federal court by virtue of its removal by the United States following its impleader by the remaining defendant. The plaintiffs have asserted no claim against it. Hence, while a tort claim against the United States would have been within federal subject matter jurisdiction,[9] the fact that the Schechters have not asserted such a claim precludes a conclusion that the federal court in Hawai'i would have had subject matter jurisdiction based on the presence of the United States as a defendant. There remains, however, the question whether the Hawai'i district court would have had subject matter jurisdiction on the basis of diversity of citizenship.

■ The Schechters are citizens of New York. According to plaintiffs' papers, Tauck is a New Jersey corporation having its principal place of business in Connecticut. (Greenberg Aff. ¶¶ 15–16 & Ex. B) Hence, there is diversity of citizenship as between plaintiffs and Tauck. Plaintiffs, however, originally sued the travel agents, American Automobile Association, Inc., and Automobile Club of New York, Inc. ("ACNY"), the latter of which allegedly is a New York corporation. Hence, unless the citizenship of the travel agents—who were dismissed from the action prior to its removal—appropriately is considered in determining whether the action might have been brought in the District of Hawai'i, this action "might have been brought" in that district from the standpoint of subject matter jurisdiction.

This question is essentially a matter of statutory interpretation, turning on whether the phrase "civil action," as it is used in Section 1404(a), refers in the case of a removed action to the action in the form in which it was removed to the federal court or to the action in the form in which it was

---

4.  28 U.S.C. § 1404(a).

5.  15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction and Related Matters 2d § 3828, at 279–80 (1986) (hereinafter "Wright"). *See, e.g., American Dredging Co. v. Miller,* 510 U.S. 443, 445 n. 2, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994) ("[T]he federal doctrine of *forum non conveniens*

has continuing application only in cases where the alternative forum is abroad.")

6.  *See* 28 U.S.C. § 1404(a).

7.  15 Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, *supra,* § 3845, at 341–43.

8.  *See* 28 U.S.C. § 1391(a)(2).

9.  28 U.S.C. § 1346(b)(1).

commenced in the state court. Powerful considerations argue for the former interpretation.

To begin with, a cardinal purpose of Section 1404(a) was to create a means to transfer a case properly in one federal court to another in which it might more conveniently be resolved.[10] As the Supreme Court indicated in *Van Dusen v. Barrack*, a narrow reading of the "where it might have been brought" clause would be unjustified, as it would "narrow the range of permissible federal forums" and thus undercut the important "goals of convenience and fairness."[11]

Second, the distinction between the *forum non conveniens* doctrine and transfers pursuant to Section 1404(a) is highly pertinent here. A successful *forum non conveniens* motion results in a dismissal of the action whereas the latter leaves it pending but changes its venue.[12] *Forum non conveniens* dismissals therefore carry with them seeds of mischief absent in Section 1404(a) transfers. Such dismissals, for example, may leave the plaintiff without a remedy if the statute of limitations has run.[13] They may create openings for defendants to seek to preempt the choice of forum by filing a new action before the plaintiff and thus to take advantage of the "first-filed" rule. And it surely was among Congress' purposes in enacting Section 1404(a) to eliminate these problems to the extent possible.[14] To construe the statute to require the conclusion that an action removed to a federal court in a posture in which there is complete diversity may not be transferred to another, more convenient federal court because there was a non-diverse party in the case when it was commenced in the state court would exalt form over substance. It would require consideration of the convenience issues in such cases in the context of *forum non conveniens* rather than Section 1404(a) motions in circumstances in which no real purpose would be served by doing so.

This view is reinforced by Congress' determination that a change in parties while an action is pending in the state court which results in the creation of complete diversity warrants removal, subject to certain temporal limitations, notwithstanding that the action was not removable at the time the action was commenced.[15] Thus, Congress is unwilling to have the removability of an action determined once and for all by its posture at the moment it is commenced. It would make considerably less sense to make the posture at commencement govern the transferability of an action under Section 1404(a) depend upon whether there was something about the case at the time it was filed in the state court that would have prevented filing in federal court where that facet of the case was eliminated prior to removal.

The cases dealing with analogous questions fully support this analysis. In *In re Fine Paper Antitrust Litigation*,[16] the Third Circuit held that an action "might have been brought" in a proposed transferee district despite the fact that venue could not have been obtained in that district as to certain defendants at the time the action was commenced because those defendants had settled out of the case prior to consideration of the transfer motion.[17] As Judge McLaughlin said in reaching the identical result in *Fairfax Dental Ltd. v. S.J. Filhol Ltd.*,[18] "[i]t would elevate form over substance to forbid a transfer ... on the basis of an objection—that the suit could not originally have been

---

**10.** *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964).

**11.** *Id.* at 622–23, 84 S.Ct. 805.

**12.** *See, e.g., Norwood v. Kirkpatrick*, 349 U.S. 29, 31, 75 S.Ct. 544, 99 L.Ed. 789 (1955) (quoting *All States Freight v. Modarelli*, 196 F.2d 1010, 1011 (3d Cir.1952)).

**13.** *Id.* at 31, 75 S.Ct. 544. Courts granting *forum non conveniens* dismissals often condition their actions upon waiver of the bar of limitations.

**14.** *See Callan v. Lillybelle, Ltd.*, 39 F.R.D. 600, 602–03 (S.D.N.Y.1966).

**15.** *See* 28 U.S.C. § 1446(b).

**16.** 685 F.2d 810 (3d Cir.1982), *cert. denied sub nom. Alaska v. Boise Cascade*, 459 U.S. 1156, 103 S.Ct. 801, 74 L.Ed.2d 1003 (1983).

**17.** *Id.* at 818–19.

**18.** 645 F.Supp. 89 (E.D.N.Y.1986).

brought in the transferee district—" due to the presence of a party who had since settled out of the case.[19] And the same result has been reached where the party whose presence originally created the venue defect had been removed from the action by dismissal rather than settlement.[20] Finally, although it has not had occasion to pass directly on this question, our own circuit has evidenced its flexible approach to Section 1404(a) and its remedial purpose by holding that, where the presence of a party prevents transfer of the entire action to a convenient transferee form, a district court may sever the action, transfer those portions involving parties as to whom venue is proper in the transferee forum, and retain only those portions as to which venue would not lie there.[21]

▪ For all of these reasons, this Court holds that the phrase "civil action" as used in Section 1404(a) does not refer to the action in its posture at the time of its commencement in the state courts. The presence at that time of non-diverse defendants which were dismissed out of the case prior to its removal is not material. In view of the complete diversity between plaintiffs and Tauck, this action "might have been brought" in the District of Hawai'i as long as plaintiffs could have obtained personal jurisdiction over the defendant. And given that the accident allegedly occurred in Hawai'i as a result of the negligent supervision there by Tauck's tour guide, there is no doubt on that score.[22] Accordingly, this action "might have been brought" in the District of Hawai'i within the meaning of 28 U.S.C. § 1404(a).

19. *Id.* at 91–92.

20. *Magee v. Essex–Tec Corp.,* 704 F.Supp. 543, 546 (D.Del.1988).

21. *Wyndham Assocs. v. Bintliff,* 398 F.2d 614, 618–19 (2d Cir.), *cert. denied,* 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438 (1968); *see also Sunbelt Corp. v. Noble Denton & Assoc., Inc.,* 5 F.3d 28, 33 (3d Cir.1993).

22. HAW. REV. STAT. ANN. § 634–35(a)(2) (Michie 1997) (extending long arm jurisdiction to causes of action arising from the commission of a tortious act in Hawai'i).

23. *Thunder Island, Inc. v. A.G. Sport, Inc.,* No. 97 Civ. 4136(LAK), 1997 WL 599414, at *1

*Convenience of Parties and Witnesses and the Interest of Justice*

▪ In considering whether a transfer would be for the convenience of the parties and witnesses and in the interest of justice, "[t]he plaintiff's choice of forum is entitled to substantial weight and will not be disturbed lightly." [23] In order to overcome that choice, the movant must make "a strong showing that the balance of convenience and the interest of justice weigh heavily in favor of a transfer." [24] The factors informing that judgment "include (1) the convenience to the parties, (2) the convenience to the witnesses, (3) the relative ease of access to sources of proof, (4) the availability of process to compel the attendance of unwilling witnesses, (5) the cost of obtaining willing witnesses, (6) the practical problems indicating where the case can be tried more expeditiously and inexpensively, and (7) the interests of justice." [25]

In this case, plaintiffs' choice of forum is entitled to substantial deference, as they are residents of New York and certainly cannot be said to have selected this forum capriciously.

The convenience of the parties is a closer question. No doubt plaintiffs would be inconvenienced personally if they had to attend a trial in Hawai'i, although the inconvenience, as evidenced by their selection of Hawai'i as a vacation destination, presumably would be mitigated by the attractions of that state. Mr. Schechter's New York treating physician either would be inconvenienced by a trip to Hawai'i at considerable expense to plaintiffs or, far more likely, would testify only by deposition. While Tauck is headquartered in

(S.D.N.Y. Sept.26, 1997) (citing *Factors, Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2d Cir.1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979)).

24. *Southland Terrace Assoc. v. Mellon Bank, N.A.,* 874 F.Supp. 69, 71 (S.D.N.Y.1995).

25. *Karriem v. Amer. Kennel Club,* 949 F.Supp. 220, 221 (S.D.N.Y.1996) (citing *Schneider v. Sears,* 265 F.Supp. 257, 263 (S.D.N.Y.1967) (Weinfeld, J.)); *Albert v. Apex Fitness, Inc.,* No. 97 Civ. 1151(LAK), 1997 WL 323899, at *4 (S.D.N.Y. June 13, 1997) (same).

this area and thus could oversee the litigation somewhat more conveniently here, its only witness with any pertinent knowledge resides in Hawai'i and, as will appear below, probably cannot be compelled by legal process to come to New York for a trial. The Court recognizes, of course, that an employer frequently can persuade its employees to travel for business purposes such as testifying in the employer's behalf at a trial. But there is no assurance that Mr. Plomer, the tour guide, will be employed by Tauck at the time of trial. In sum, a transfer to Hawai'i most likely would inconvenience the plaintiffs by causing them to make a long trip to an attractive destination and to rely on the deposition of the New York treating physician rather than live testimony. Denial of a transfer at best would require Tauck to incur the expense of bringing Mr. Plomer to New York and at worst deprive it of his live testimony before the trier of fact.

The convenience of non-party witnesses appears not to be a factor here. There is no reason to believe that any non-party witness who is not within the subpoena power of the trial court, excepting possibly Mr. Plomer, would appear at trial.

The relative ease of access to sources of proof and the availability of process to compel the attendance of unwilling witnesses in this case boils down to the same thing: in which forum would the trier of fact have the benefit of live testimony from more of the significant witnesses? In order to make this assessment, of course, the Court must have information concerning who those witnesses are and what they are likely to say. And Tauck is met at the outset with plaintiffs' contention that its motion should be denied out of hand because it has not come forward with the names of the witnesses upon which it relies and summaries of their anticipated testimony.

■■■ There is support in the cases for the proposition that a party seeking or opposing transfer must identify the witnesses by name and summarize their testimony, something that neither side has done here. The principle, however, cannot be divorced from its purpose. The fundamental point is that parties advocating and resisting transfer must provide the court with sufficient information to make an intelligent judgment as to whether the choice of one forum or the other would result in the loss of live testimony of witnesses on one side or the other or otherwise affect the balance of convenience or the interest of justice. The relative strength and specificity of the parties' showings is simply one more factor to consider in deciding the ultimate question whether the movant has sustained its burden of overcoming plaintiffs' choice of forum.[26]

Here, the only witnesses that either side has identified by name are the plaintiffs themselves and Tauck's tour guide, Mr. Plomer.[27] Nevertheless, the Court is obliged to exercise some common sense in the matter rather than simply to apply mechanically a supposed requirement of names of witnesses and summaries of testimony. Common sense indicates that there is at least one treating physician in New York in view of plaintiffs' assertion that the fracture was reduced and fixed here, and that must be considered despite the plaintiffs' failure to identify the physician by name or to summarize the anticipated testimony. By the same token, it is quite likely that (1) the Hawai'ian bus driver will be a significant witness given plaintiffs' contention, in one of their accounts, that the fall occurred as Mr. Schechter disembarked from the bus, and (2) there must have been at least some treatment in Hawai'i for a

**26.** See, e.g., Scheidt v. Klein, 956 F.2d 963, 966 (10th Cir.1992); ROC, Inc. v. Progress Drillers, Inc., 481 F.Supp. 147, 152 (W.D.Okla.1979); Crossroads State Bank v. Savage, 436 F.Supp. 743, 745 (W.D.Okla.1977); James v. Norfolk & W. Ry. Co., 430 F.Supp. 1317, 1318 (S.D.Ohio 1976); cf. Jacobs v. Lancaster, 526 F.Supp. 767, 768 (W.D.Okla.1981); McAlister v. Gen. Am. Life Ins. Co., 516 F.Supp. 919, 921 (W.D.Okla.1980); Bussey v. Safeway Stores, Inc., 437 F.Supp. 41, 42 (E.D.Okla.1977).

**27.** Plaintiffs have appended a list of persons on the tour, indicating that they are potential witnesses and mistakenly asserting that a majority are New Yorkers. (Greenberg. Aff. ¶ 19 & Ex. C) Apart from plaintiffs, only 5 of the 39 tour members were New Yorkers at the time of the tour. (Id.) There is, of course, no evidence that any of them saw whatever happened.

fracture sufficiently serious to cause Mr. Schechter to cut short his trip and undergo open reduction and internal fixation. Thus, discounting the parties' more general claims about other witnesses available only in their preferred fora,[28] it is reasonable to conclude that a trial of this case would require the testimony of the plaintiffs, Mr. Plomer, the bus driver, treating physicians from New York and Hawai'i, and expert witnesses who have not yet been identified and whose convenience therefore cannot be considered.

There is no reason to assume that the Gray Lines bus driver or the Hawai'ian doctor would be willing to come to New York for trial, just as there is no reason to assume that Mr. Schechter's treating physician would be willing to take several days away from his practice to journey to Hawai'i for a trial. While Mr. Plomer might be available for trial in New York, it perhaps is equally likely that he would not. Given the significance of Mr. Plomer and the bus driver to the determination of liability and the lack of any comparable liability witness of whom plaintiffs would or might be deprived by a trial in Hawai'i, the availability of process to compel the attendance of unwilling witnesses favors Tauck to some degree.

The remaining factors comprehend a myriad of practical considerations bearing on the appropriateness of the competing fora, those significant here being the desirability of the case being tried in a district familiar with the governing law, the ability to bring all of the parties before the trial court, and the speed with which the case can be tried.

Under conventional principles, the substantive law applicable in this case would be determined by the choice of law rules of New York.[29] The principal issues in this case are conduct-regulating: the duty of Tauck as the tour operator toward Mr. Schechter, the duty of the United States as owner of the land on which the accident occurred, and possibly the duty of the bus operator toward its passengers. In consequence, New York would apply the law of Hawai'i.[30] But while Hawai'ian law will control, there appears to be nothing unusual, unsettled, or particularly difficult about the relevant Hawai'ian principles.[31] Hence, the extent to which the applicability of Hawai'ian law supports transfer is marginal at best.

More significant is the probability that Tauck will seek contribution from Gray Lines of Honolulu, the operator of the tour bus.[32] In view of plaintiffs' allegation, in one of their versions, that the accident occurred as Mr. Schechter disembarked from the bus, it is at least arguable that negligence of Gray Lines' driver in supervising the disembarkation of the passengers contributed to the accident. And while neither side has placed any evidence as to the amenability of Gray Lines of Honolulu to suit in New York, it is sufficiently likely that it cannot be sued here[33] as to

**28.** Tauck relies on park officials presumably available only in Hawaii. Plaintiffs point to a few fellow tour members (not remotely approaching the majority claimed by plaintiffs' counsel) who resided, at the time of the tour, within the subpoena range of this Court. Without any information as to whether any park officials or other persons on the tour have any pertinent knowledge, the Court disregards all of these claims.

**29.** E.g., *Sheldon v. PHH Corp.*, 135 F.3d 848, 852 (2d Cir.1998).
To the extent that the United States is sued under the Federal Tort Claims Act, the claim against it also would be governed by state law. *See, e.g., Hatahley v. United States*, 351 U.S. 173, 180–81, 76 S.Ct. 745, 100 L.Ed. 1065 (1956).

**30.** *Id.* at 854.

**31.** *See, e.g., Takayama v. Kaiser Found. Hosp.*, 82 Hawai'i 486, 498–99, 923 P.2d 903, 915–16

(1996); *Kaczmarczyk v. City and County of Honolulu*, 65 Haw. 612, 615–16, 656 P.2d 89, 91–92 (1982).

**32.** Hawai'i has adopted the Uniform Contribution Among Tortfeasors Act. HAW. REV. STAT. ANN. § 663–11 *et seq.* (Michie 1997).

**33.** N.Y.CPLR § 302(a), subd.3, subject to the Due Process Clause, permits the exercise of personal jurisdiction in some cases in which the defendant "commits a tortious act without the state causing injury to a person ... within the state." It is clear, however, that mere residence or domicile of the injured party in New York is insufficient to ground jurisdiction on this provision. *Fantis Foods, Inc. v. Standard Imp. Co.*, 49 N.Y.2d 317, 326, 425 N.Y.S.2d 783, 787, 402 N.E.2d 122 (1980). The fact that plaintiffs endured pain and suffering and other sequelae here likewise affords no basis of personal jurisdiction. *McCulley v. Anglers Cove Condo. Assoc., Inc.*, 977 F.Supp.

make its presence in Hawai'i weigh in Tauck's favor.

Finally, according to the most recent data published by the Administrative Office, it is likely that this action could be reached for trial considerably more quickly in the District of Hawai'i than in this Court.[34] Accordingly, the interests of both sides in a prompt resolution of this dispute favor transfer.

In sum, the factors supporting the plaintiffs are the deference appropriately given their choice of forum, their personal inconvenience, and the likelihood that a transfer to Hawai'i would result in Mr. Schechter's New York treating physician testifying by deposition. The factors supporting Tauck are (1) its inability to compel the bus driver, the Hawai'ian treating physician, and perhaps even Mr. Plomer to come to New York for a trial, (2) the significant likelihood that it will seek to implead the bus company, which appears to be impossible in New York, (3) the likelihood that the case could be reached for trial in Hawai'i considerably more quickly than in this district and, although of considerably less significance, (4) the applicability of Hawai'ian law to this dispute. Taking all of the foregoing into consideration, the Court concludes that Tauck has sustained its burden of demonstrating that a transfer would be for the convenience of parties and witnesses and in the interest of justice.

### Conclusion

For the foregoing reasons, defendant's motion to dismiss or transfer is granted to the extent that the action is transferred to the United States District Court for the District of Hawai'i. It is otherwise denied.

SO ORDERED.

177, 179 (E.D.N.Y.1997); *Lancaster v. Colonial Motor Freight Line, Inc.*, 177 A.D.2d 152, 158, 581 N.Y.S.2d 283, 287–88 (1st Dept.1992).

**34.** The median time interval from filing to trial of civil cases in which trials were completed in the year ended September 30, 1997 was 23 months in this district as compared to 15 months in the District of Hawai'i. ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS, JUDICIAL BUSINESS OF THE UNITED STATES COURTS Table C–10 (1997).