**DALE CARNEGIE & ASSOCIATES, INC., Plaintiff,**

v.

**Robert P. KING, etc., and Robert P. King and Associates, Inc., Defendants.**

**No. 98 CIV. 4310(LAK).**

United States District Court, S.D. New York.

Dec. 30, 1998.

**360**

Eugene R. Scheiman, Daniel J. Friedman, Baer Marks & Upham LLP, New York City, for Plaintiff.

John A. Fogarty, Steven R. Gustavson, Paul A. Ragusa, Baker & Botts, L.L.P., New York City, for Defendants.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Plaintiff Dale Carnegie & Associates, Inc. ("DCA") here seeks a declaration that it effectively has terminated the agreement by which it licensed defendant Robert P. King to conduct its Dale Carnegie adult education business in Orange County, California, as of the close of business on December 31, 1998. King and his assignee, defendant Robert King and Associates, Inc. ("Associates") contend that DCA's notice of termination violated the California Franchise Relations Act ("CFRA"),[1] that the notice was void, and that the license agreement therefore renewed for another year in accordance with its terms. The matter is before the Court on (1) defen-

dants' motion to dismiss the complaint or, alternatively, transfer this action to California, and (2) plaintiff's motion for summary judgment and an injunction restraining defendants from proceeding with a subsequent related action initially brought by defendants in California.

*Facts*

The relevant facts are simple and undisputed.

On April 1, 1988, DCA, its sister company, Dale Carnegie Service Corporation ("DCSC"), and King entered into a Sponsor's License Agreement (the "Sponsor's Agreement") pursuant to which DCA granted to King, and King accepted, a license to promote, offer, organize and conduct Dale Carnegie classes in Orange County, California. The agreement was for an initial period from April 1, 1988 through December 31, 1990, provided, however, that the license automatically would be renewed for successive twelve month periods unless terminated pursuant to paragraph 53 or 54, which are not relevant here, and subject also to paragraph 61.[2] Paragraph 61 provides in relevant part that:

"Licensor [DCA] may by notice given in writing inform Sponsor [King] and Intermediary [DCSC] that the Licensor–Sponsor relation is to cease at the close of business on the last day in the basic period or renewal period. If such notice is given, it shall be given not less than six (6) months and not more than eleven (11) months prior to the day on which the relation is to cease. The Licensor reserves the right to decide whether or not the relation is to cease and the right to give such notice without reason or cause for Licensor's decision so to do, or, if reason or cause exists, without statement to Sponsor of such reason or cause."[3]

The Sponsor's Agreement provides also that it "and the performance hereunder shall be governed by the laws of the State of New York"[4] and that "[i]f any of the provisions of this agreement shall be determined to be

---

**1.** Cal. Bus. & Prof. Code §§ 20001 *et seq.* (West 1998).

**2.** King Decl. Ex. A, ¶¶ 7–8.

**3.** *Id.* ¶ 61.

**4.** *Id.* ¶ 97.

invalid under the applicable laws of a place wherein Licensor, Intermediary, or Sponsor conducts business ... such contravention or invalidity shall not invalidate the whole agreement; but this agreement shall be construed as if not containing the particular provision or provisions determined to be invalid, and the rights and obligations of the parties shall be construed and enforced accordingly." [5]

On October 19, 1988, DCA, DCSC and King entered into an assignment and assumption agreement with Associates pursuant to which King assigned all of his right, title and interest in the Sponsor's Agreement to Associates (the "Assignment").[6] The Assignment contained governing law and severability provisions identical to those in the Sponsor's Agreement.[7]

On May 20, 1998, DCA gave notice that the relation between it and the defendants "is to cease at the close of business on December 31, 1998." [8] On the same day, DCA commenced this action in the New York Supreme Court seeking a declaration that the relation between DCA and defendants would cease on December 31, 1998 and that defendants thereafter would have no right to act, or hold themselves out, as a Dale Carnegie Sponsor. Defendants subsequently removed DCA's action to this Court. They also commenced their own action against DCA and DCSC in California, but the California district court transferred King's action to this Court and it has been consolidated with this case.[9]

### Discussion

While the crux of the dispute is whether DCA's notice of non-renewal violated the CFRA (assuming it applies at all) and, if so, the consequences of any such violation, defendants' motion raised a host of other issues, all obviously designed to derail this case in favor of defendants' own California

action. The transfer of the California action to this Court renders many of these issues academic, but a handful still must be addressed.

### Subject Matter Jurisdiction

Defendants argue that there was no actual controversy between them and DCA on May 20, 1998, the date on which this action was commenced. This, they say, requires the conclusion that there was no "case or controversy" and thus no subject matter jurisdiction or, at least, that the complaint therefore did not state a legally sufficient claim for declaratory relief.[10]

Defendants' argument is entirely frivolous. On the morning of May 20, 1998, DCA's Oliver Crom telephoned defendant King, told him of DCA's decision not to renew the Sponsor's Agreement, and sought King's agreement that DCA had the right so to do. King did not agree .[11] A justiciable controversy well within Article III of the Constitution and the Declaratory Judgment Act existed at that point, if not before. Moreover, while the point is immaterial to the decision, it is difficult, notwithstanding the temporal difference in the frame of analysis, to see how defendants reasonably could argue that Article III and the Declaratory Judgment Act should be construed to require dismissal of DCA's action for lack of an actual controversy when defendants' own lawsuit against DCA amply demonstrates the existence of a concrete dispute.

### Alleged Lack of Necessary Party

Defendants next claim that DCSC, the "Intermediary" under and party to the Sponsor's Agreement, is a necessary party [12] and that the action must be dismissed because it has not joined as a plaintiff.

While the conclusion is by no means clear, the Court assumes without deciding that DCSC should be joined if its joinder is feasi-

---

5. *Id.* ¶ 98.

6. *Id.* Ex. B.

7. *Id.* ¶¶ 10–11.

8. King Decl. ¶ 34 & Ex. G.

9. *King v. Dale Carnegie & Assoc., Inc.,* No. 98 Civ. 6231(LAK).

10. *E.g.,* Def. Reply Mem. 8–9.

11. King Decl. ¶¶ 29–31, 33, 35.

12. Defendants do not claim that DCSC is indispensable.

ble.[13] This assumption requires only that the Court order that DCSC be joined—it does not require dismissal.[14] DCA and DCSC have agreed to amend the complaint to add DCSC as a plaintiff.[15] In consequence, the Court deems the complaint amended to add DCSC as a plaintiff and directs that the caption be amended so to reflect.[16] There manifestly is no basis for dismissal in the initial failure to name DCSC as a plaintiff, even assuming that it is a necessary party.

*Change of Venue*

Defendants seek transfer of this action to the Central District of California pursuant to 28 U.S.C. § 1404(a). The principal basis for the request was the pendency in that court of defendants' own action against plaintiffs. To that extent, the motion is moot in view of the transfer by the California court of defendants' action to this Court. But defendants argue also that this case should go to California in the interest of justice and for the convenience of parties and witnesses, factors not previously considered by the California court which acted purely on the basis of the forum selection clauses in the Sponsor's Agreement and the Assignment.[17]

The parties have spilled a good deal of ink on such questions as whether the California district court's holding that the forum selection clauses are binding and enforceable is conclusive of this Court's consideration of the same issue and, if it is not conclusive, whether the ruling nevertheless should be followed. But the Court need not enter that thicket.

DCA's "choice of forum is entitled to great deference and will be disturbed only upon a showing that the balance of convenience and the interest of justice weigh heavily in favor

of a transfer." [18] The factors informing the determination of whether the balance of convenience tips so decidedly in favor of the moving party as to warrant disturbing the plaintiff's choice are so well established as to make repetition unnecessary.[19]

■ In this case, plaintiffs and defendants each wish to litigate in a court close to their headquarters, i.e., in New York and California, respectively. As far as the parties are concerned, a transfer from New York to California simply would shift the inconvenience of litigating in a distant forum from one side to the other—certainly not a basis for upsetting plaintiff's selection.

Defendants claim also that unidentified employees having knowledge of matters at issue and its documents pertinent to the dispute are in California. But it has not identified any of the employees or given sufficient information to permit the Court to make an informed judgment concerning the relevance and materiality of any possible testimony by them.[20] The defendants' "reliance on the location of documents overlooks the fact that copying technology has made the use of original documents in litigation about as common as the dodo bird except in unusual circumstances" [21] not present here.

In the last analysis, there simply would be no basis for disturbing DCA's choice of forum even if the Court were to disregard entirely the fact that defendants consented to suit in this district and agreed to New York governing law clauses in the operative contracts. That would be true even if a trial were probable which, as the following shows, it is not. In consequence, the motion to transfer is denied.

13. *See* FED. R. CIV. P. 19(a).

14. *See id.*

15. Pl. Reply Mem. 34; Crom Aff. ¶ 30.

16. *See* FED. R. CIV. P. 15(c) (amendment of pleadings to conform to the proof).

The Court notes that DCSC, like DCA, is a New York corporation (Def. Motion Ex. 4) with its principal place of business in Garden City, New York (Scheiman Aff. Ex. B, ¶ 4). As both defendants are citizens only of California (*id.* ¶ 3), the addition of DCSC does not destroy the complete

diversity of citizenship that is the basis of this Court's subject matter jurisdiction.

17. Def. Reply Exs., Ex. 5.

18. *Southland Terrace Assocs. v. Mellon Bank*, 874 F.Supp. 69, 71 (S.D.N.Y.1995).

19. *See generally, e.g., Karriem v. Am. Kennel Club*, 949 F.Supp. 220, 221 (S.D.N.Y.1996).

20. *See Schechter v. Tauck Tours, Inc.*, 17 F.Supp.2d 255, 261–62 (S.D.N.Y.1998).

21. *Southland Terrace Assocs.*, 874 F.Supp. at 71.

*The Merits*

The substantive issue is simply stated.

Defendants claim that their relationship with plaintiffs is a "franchise" within the meaning of CFRA,[22] a proposition that plaintiffs do not seriously dispute and that the Court assumes for purposes of this decision. Section 20025 of CFRA provides in part that "[n]o franchisor may fail to renew a franchise unless" it provides prior written notice of its intention so to do.[23] Section 20030 states that:

"All notices of termination or non-renewal required by this chapter:

"(a) Shall be in writing;

 * * * * * *

"(c) Shall contain a statement of intent to terminate or not renew the franchise:

"(1) Together with a statement of reasons therefor . . ."

Defendants contend that DCA's notice of non-renewal did not contain a statement of reasons and that the notice therefore violated CFRA and was ineffective. Accordingly, in their view, the franchise has renewed for another year because a new notice declining to renew could not become effective under the terms of the Sponsor's Agreement until December 31, 1999. Plaintiffs, for their part, argue that DCA's notice was effective, even assuming *arguendo* that CFRA applies here,[24] because (a) its requirement of a statement of reasons is inapplicable to this notice of non-renewal, (b) the statute in any case

was satisfied by DCA's notice, and (c) the non-renewal was effective even if the notice failed to comply with Section 20030 of CFRA.

Defendants' contention that DCA's notice of non-renewal failed to comply with Section 20030 depends in the first instance on the proposition that Section 20030 required a statement of reasons in this notice. While Section 20030, if read in isolation, seems to do so, that is an overly simplistic view of the statute because Section 20030 cannot be read apart from the rest of CFRA.

Article 3 of CFRA sets forth permissible grounds for termination of a franchisee prior to expiration of the franchise term as well as the circumstances in which the franchisor may terminate without affording the franchisee an opportunity to cure any breach.[25] Broadly speaking, it forbids termination prior to the expiration of the franchise term absent good cause, bankruptcy, abandonment or fraud.[26] Article 4 governs non-renewal, which does not necessarily require cause. And Article 5, which consists of Section 20030, prescribes the contents of notices required under CFRA.

The critical provision for purposes of this case is Section 20025, which relates to non-renewal. It provides in part that:

"No franchisor may fail to renew a franchise unless such franchisor provides the franchisee at least 180 days prior written notice of its intention not to renew; and

**22.** CAL. BUS. & PROF. CODE § 20001 (West 1998).

**23.** *Id.* § 20025.

**24.** This assumption makes it unnecessary for the Court to decide a much mooted question which appears to be one of first impression in New York, viz., whether a New York court would hold that a New York governing law clause in a franchise agreement precludes application of another state's franchise or dealer protection statute that otherwise would apply to the franchisor-franchisee relationship. Courts in other jurisdictions have reached a variety of results on this and closely related questions. Some have held that a contractual choice of law clause displaces an otherwise applicable franchise statute, even of the forum state, as long as there is a reasonable relationship between the law chosen and the parties' relationship. *E.g., United Wholesale Liquor Co. v. Brown–Forman Distillers Corp.,* 108 N.M. 467, 470–71, 775 P.2d 233, 236–37 (1989).

Others have held that a governing law clause displaces an otherwise applicable franchise statute unless the statute evidences a clear legislative intention to override such clauses. *E.g., JRT, Inc. v. TCBY Systems, Inc.,* 52 F.3d 734, 739 (8th Cir.1995) (non-forum statute); *Banek Inc. v. Yogurt Ventures U.S.A., Inc.,* 6 F.3d 357, 360 (6th Cir.1993). Still others have held that otherwise applicable state franchise protection statutes "trump" governing law clauses. *E.g., Bush v. Nat'l School Studios, Inc.,* 139 Wis.2d 635, 641–45, 407 N.W.2d 883, 886–87 (1987) (forum statute); *see Instructional Systems, Inc. v. Computer Curriculum Corp.,* 130 N.J. 324, 614 A.2d 124 (1992).

**25.** CAL. BUS & PROF. CODE §§ 20020–21.

**26.** *Id.*

"(a) During the 180 days prior to expiration of the franchise the franchisor permits the franchisee to sell his business to a purchaser meeting the franchisor's then current requirements for granting new franchises, or if the franchisor is not granting a significant number of new franchises, the then current requirements for granting renewal franchises; or

"(b)(1) The refusal to renew is not for the purpose of converting the franchisee's business premises to operation by employees or agents of the franchisor for such franchisor's own account ...; and

"(2) Upon expiration of the franchise, the franchisor agrees not to seek to enforce any covenant of the non-renewed franchisee not to compete with the franchisor or franchisee's of the franchisor; or

"(c) Termination would be permitted pursuant to Section 20020 or 20021 ..." [27]

Thus, non-renewal pursuant to Sections 20025(a) and (b) is permissible without cause. The only constraint under (a) is that the franchisor afford the franchise an appropriate opportunity to sell its business. The only constraints under (b) are that the non-renewal not be for the forbidden purpose of conversion of the franchisee's business premises and that the franchisor agree not to enforce any restrictive covenant. Non-renewal pursuant to Section 20025(c), on the other hand, is quite a different matter. It is permissible only in circumstances in which termination prior to the end of the franchise term would be permitted by Sections 20020 and 20021, which typically require good cause and that the franchisee be given the opportunity to cure.

This is quite significant for the construction of Section 20030, the notice requirement upon which defendants rely. Section 20030 applies generally to notices of termination and non-renewal. The requirement of a statement of reasons is entirely understandable as applied to notices of termination, as the franchisor ordinarily must have good cause and the franchisee often must be given an opportunity to cure, which of course requires that it know what to cure. It makes perfect sense as applied to notices of non-renewal pursuant to Section 20025(c) because that section applies exactly the same criteria for such non-renewals as govern terminations prior to expiration of term. But a statement of reasons would serve no purpose at all as applied to non-renewal pursuant, for example, to Section 20025(a) and (b), as neither of those provisions requires that the franchisor have cause for the non-renewal and there is no deficiency curable by the franchisee that would forestall non-renewal.

 In construing California legislation, generally, courts are obliged to view statutes as a whole and to harmonize their provisions.[28] They must assume that the legislature intended to reach reasonable results consistent with its manifest purpose, and they must interpret statutes to avoid idle acts.[29] A construction of Section 20030 that would require a franchisor to give a statement of reasons for non-renewal in circumstances in which the California legislature has determined that it may decline to renew without having good or legal cause would be to ascribe to the legislature an intention to prescribe the doing of a useless act—the performance of a ritual serving no purpose. The Court declines so to construe it. It holds that Section 20030 requires that a notice of non-renewal contain a statement of reasons only where the non-renewal is permissible if and only if (a) there is good cause or (b) some other condition curable by the franchisee allegedly exists and its cure would remove the basis for non-renewal. As it is undisputed that the non-renewal of the Spon-

---

**27.** Sections 20025(d) and (e) afford still other grounds for non-renewal, but they are not relevant here.

**28.** *E.g., People v. Loeun,* 17 Cal.4th 1, 9, 69 Cal.Rptr.2d 776, 780, 947 P.2d 1313, *cert. denied, Loeun v. California,* —— U.S. ——, 118 S.Ct. 1820, 140 L.Ed.2d 957 (1998); *Ford & Vlahos v. ITT Comm. Fin. Corp.,* 8 Cal.4th 1220, 1234, 36 Cal.Rptr.2d 464, 472, 885 P.2d 877 (1994).

**29.** *E.g., Loeun,* 17 Cal.4th at 9, 69 Cal.Rptr.2d at 780, 947 P.2d 1313; *Santa Clara County Local Transp. Auth. v. Guardino,* 11 Cal.4th 220, 235, 45 Cal.Rptr.2d 207, 215, 902 P.2d 225 (1995); *Shoemaker v. Myers,* 52 Cal.3d 1, 22, 276 Cal. Rptr. 303, 316, 801 P.2d 1054 (1990).

sor's Agreement was permissible under both Section 20025(a) and 20025(b),[30] assuming that CFRA applies at all, no statement of reasons was required in the notice of non-renewal.

Even if the Court were to exalt form over substance by construing Section 20030 as requiring a statement of reasons in this case, plaintiffs nevertheless would be entitled to judgment because the notice of non-renewal satisfied Section 20030. The notice, addressed to King, stated that "[t]his is to notify you and [Associates] that pursuant to paragraph 61 of the [Sponsor's] Agreement, the Licensor–Sponsor relation between [DCA], on the one hand, and you and [Associates], on the other hand, is to cease at the close of business on December 31, 1998."[31] Where, as here, there is no statutory or contractual requirement of good or legal cause for non-renewal, this statement that the non-renewal was pursuant to a stated clause of the parties' contract was a sufficient statement of reason for the DCA's action.

Finally, even if it be assumed that CFRA applies and that the notice was insufficient under its terms, it does not necessarily follow that the notice of termination was ineffective. Quite the contrary.

Section 20035 of CFRA provides that a franchisee's remedy in the event of a non-renewal that does not conform to the statute is quite limited: the franchisor must offer to repurchase from the franchisee its resalable current inventory at the lower of the fair wholesale market value or the price paid by the franchisee.[32] As the Ninth Circuit has held, this is a franchisee's exclusive remedy under the statute where the franchise is not renewed other than in accordance with CFRA.[33]

Nor are defendants aided by Section 20037 of the statute, which provides that "[e]xcept as expressly provided herein, nothing in this article [Article 6. Offers to Repurchase Inventory] shall abrogate the right of a franchisee to sue under any other law."[34] "Any other law" refers to something other than CFRA.[35] Hence, CFRA itself provides defendants with no remedy except repurchase.[36] Certainly there is nothing in the statute that renders the non-renewal ineffective.

Accordingly, assuming *arguendo* that the relationship between DCA and defendants was a "franchise" and that CFRA otherwise applies, the Court nevertheless holds that the notice of non-renewal was not required to contain a statement of reasons, that it nevertheless contained a statement of reasons sufficient in the circumstances, and in any event that the notice of non-renewal was effective in accordance with its terms.

### Conclusion

For the foregoing reasons, (1) defendants' motion to dismiss the complaint or transfer the case to the Central District of California [4–1] is denied in all respects, and (2) plaintiff's motion for summary judgment and an injunction restraining prosecution of the California action [7–1] is granted to the extent that summary judgment is granted, and the Court declares that (a) the Licensor–Sponsor

---

30. There is no suggestion that the refusal to renew was for the purpose of converting defendants' business premises to operation by DCA. DCA has agreed not to enforce any restrictive covenant. (Pl.Mem.26) In consequence, Section 20025(b) is satisfied. Section 20025(a) also is satisfied because Paragraph 61 of the Sponsor's Agreement permitted King to assign it to another person effective as of the expiration date.

31. Crom Aff. Ex. B.

32. Calif. Bus. & Prof. Code § 20035.

33. *Boat & Motor Mart v. Sea Ray Boats, Inc.,* 825 F.2d 1285, 1290–91 (9th Cir.1987). Defendants attempt to distinguish this case on the theory that the franchise agreement in that case did not include a provision for automatic renewal from year to year. (Def. Reply Mem. 5–6) But the argument is not persuasive. In *Boat & Motor Mart,* the statutory violation was the failure to give the requisite 180 days notice of intention not to renew, a violation for which the court held that Section 20035 provided the exclusive statutory remedy. Here the violation, if violation there was, was the failure to include a sufficient statement of reasons in the notice of intention of non-renewal. Defendants offer no reason why the two situations should be treated differently.

34. Calif Bus & Prof. Code § 20037.

35. *Boat & Motor Mart,* 825 F.2d at 1291.

36. *Id.*

relation between DCA, on the one hand, and defendants, on the other hand, ceases at the close of business on December 31, 1998, and (b) defendants thereafter have no right to act. or hold themselves out as acting, as a Dale Carnegie Sponsor, and the motion is otherwise denied. In addition, the complaint is deemed amended, and the caption amended, to include Dale Carnegie Service Corporation as a plaintiff.

This decision disposes of all claims asserted by all parties in No. 98 Civ. 4310. Unresolved claims remain pending in No. 98 Civ. 6231.

SO ORDERED.